UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HARRY OESTREICHER, on behalf of
himself and all others similarly situated,

              Plaintiff,

  v.

ALIENWARE CORPORATION, and DOES
1–100, inclusive,

              Defendants.
_____/

No. C 07-00512 MHP

**MEMORANDUM AND ORDER**
**Re: Motion to Stay Proceedings and Compel Arbitration**

        On December 6, 2006 Plaintiff Harry Oestreicher ("Oestreicher") brought this action against defendant Alienware Corporation ("Alienware") in San Francisco County Superior Court on behalf of himself and all others similarly situated in forty-nine U.S. states. Oestreicher alleges that Alienware made misrepresentations and concealed material information in its sale of certain computers which Alienware knew to be defective. On January 25, 2007 Alienware removed the action to this court. Alienware now moves to compel arbitration of all claims asserted in Oestreicher's complaint and to stay further proceedings pending arbitration. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND[1]

        Oestreicher purchased a notebook computer from Alienware, via Alienware's website, on or around June 30, 2005. Alienware is a Florida corporation with its principal place of business in

Miami. In using the Alienware website to shop for and select his purchase, Alienware contends that Oestreicher necessarily encountered hyperlinks, contained in the footer of each page on the site, leading to Alienware's terms and conditions for sale. Lewis Dec. ¶ 7. To place his order, on the Alienware website's final checkout page, Oestreicher had to click a "Place Order" button. Id. ¶ 8. To the left of this button the following text appeared: "By clicking 'Place Order,' you confirm that you have read and agree to the **Customer Terms and Conditions Agreement**" (emphasis in original). By clicking on "Customer Terms and Conditions Agreement," Oestreicher could access the text of this agreement. Id., Exh. B. However, orders could be placed whether or not the user had actually accessed and read the agreement; the page merely required the user to acknowledge he or she had done so in order to complete the transaction. Oestreicher claims he does not recall accessing or viewing the Terms and Conditions.

In making his purchase from Alienware, Oestreicher therefore allegedly agreed to Alienware's standard terms and conditions for sale agreement. For the purposes of this motion, Oestreicher does not dispute that the terms of the sale agreement were in accord with those now before the court. The sale agreement contained the following arbitration clause including a waiver of the right to pursue class actions:

> **Binding Arbitration.** You and Alienware agree that any claim, dispute, or controversy, whether in contract, tort, or otherwise, and whether preexisting, present or future, and including statutory, common law, intentional tort and equitable claims ("Dispute") against Alienware . . . arising from, in connection with or relating to this Agreement, its interpretation, or the breach, termination or validity thereof, the relationships which result from this Agreement . . ., Alienware's advertising or any related purchase SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM . . . . YOU UNDERSTAND THAT IN THE ABSENCE OF THIS PROVISION, YOU WOULD HAVE HAD A RIGHT TO LITIGATE DISPUTES THROUGH A COURT, INCLUDING THE RIGHT TO LITIGATE CLAIMS ON A CLASS-WIDE OR CLASS-ACTION BASIS, AND THAT YOU HAVE EXPRESSLY AND KNOWINGLY WAIVED THOSE RIGHTS AND AGREED TO RESOLVE ANY DISPUTES THROUGH BINDING ARBITRATION IN ACCORDANCE WITH THIS SECTION.

Lewis Dec., Exh. A, Agreement ¶ 11. The sale agreement also contained the following choice of law clause: "**Governing law**. This Agreement and any sales hereunder shall be governed by the laws of the state of Florida, without regard to conflicts of laws principles, and excluding the United

1  Nations Convention on the International Sale of Goods." Lewis Dec., Exh. A ¶ 13 (emphasis in
2  original).

3  Oestreicher paid $4,149 for his purchase. Six months later, Oestreicher's Alienware
4  notebook overheated and shut down and has not worked since. Complt. ¶ 18. Oestreicher alleges
5  that Alienware made misrepresentations and concealed material information in its sale of certain
6  computers which Alienware knew to be defective. See id. ¶¶ 2, 15, 17, 31–36. Oestreicher asserts
7  six causes of action: (1) unfair, deceptive and unlawful business practices in violation of California's
8  Unfair Competition Law, Bus. & Prof. Code sections 17200 et seq., (2) untrue and misleading
9  advertising in violation of Cal. Bus. & Prof. Code sections 17500 et seq., (3) violation of the
10 California Legal Remedies Act ("CLRA"), Cal. Civ. Code sections 1750 et seq., (4) breach of
11 express warranties in violation of Cal. Comm. Code section 2313, (5) breach of implied warranties
12 in violation of Cal. Comm. Code section 2314, and (6) unjust enrichment. Oestreicher filed this case
13 on behalf of himself and all other similarly situated residents of California and forty-eight other U.S.
14 states who purchased Alienware notebook computers of the Area 51 product line: models Area-51m
15 5550, 5700, 5750, 7500 and 7700.

16 On February 1, 2007 Alienware brought the present motion to stay proceedings and to
17 compel arbitration pursuant to the arbitration clause. Alienware argues that the arbitration clause's
18 validity, in accordance with the choice of law clause, must be determined under Florida law. On
19 May 1, 2007, after all briefing related to this motion was complete but before oral argument,
20 Oestreicher filed his First Amended Complaint ("FAC"). The proposed class as defined in the FAC
21 is limited to California residents. FAC ¶ 29.

23 LEGAL STANDARD

24 The Federal Arbitration Act ("FAA"), 9 U.S.C. sections 1–16, requires federal courts to
25 enforce arbitration agreements and to stay any litigation that contravenes such agreements.
26 Arbitration is a matter of contact, and the court cannot require a party to arbitrate a dispute unless
27 the party has agreed to do so. United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363

3

U.S. 574, 582 (1960). Accordingly, the court's role under the FAA is limited to (1) determining whether a valid agreement to arbitrate exists and, if it does, (2) deciding whether the agreement encompasses the dispute at issue. 9 U.S.C. § 4; Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719–20 (9th Cir. 1999).

Despite the "liberal federal policy favoring arbitration agreements," Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 81 (2000), state law still has a role to play. In interpreting 9 U.S.C. section 2, the Supreme Court has held that "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987) (emphasis in original). Therefore, "generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening Section 2." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996). "In making this determination, federal courts may not address the validity or enforceability of the contract as a whole." Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 937 (9th Cir. 2001) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 (1967)).

DISCUSSION

The two-pronged Simula test requires the court to determine, first, if the arbitration clause is valid, and second, if the instant dispute falls within the scope of the arbitration clause. Because the parties do not dispute that the instant dispute falls within the scope of the clause, the court directs its analysis to the validity of the clause.

I.   Applicable State Law

To determine the validity of the arbitration clause, it is first necessary to establish the applicable law. Alienware claims that the choice of law clause of the sale agreement mandates the application of Florida law for disputes arising out of the agreement itself or out of sales thereunder. Oestreicher, on the other hand, contends that the clause's validity must be determined under

1  California law. Federal courts sitting in diversity look to the law of the forum state in making choice
2  of law determinations. Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005). Because
3  the complaint in the present action was filed in California, California's choice of law rules apply.

4        Under California law, the party advocating a contractual choice of law clause bears the
5  burden of showing that the claim falls within the scope of the choice of law provision. Washington
6  Mut. Bank, FA v. Superior Court, 24 Cal. 4th 906, 916 (2001). "If the trial court finds that the . . .
7  claims fall within the scope of a choice-of-law clause, it must next evaluate the clause's
8  enforceability pursuant to the analytical approach reflected in section 187, subdivision (2) of the
9  Restatement Second of Conflict of Laws[.]" Id.  In Nedlloyd Lines B.V. v. Superior Court, 3 Cal.
10 4th 459, 466 (1992), the California Supreme Court paraphrased section 187 as follows:

> [T]he proper approach under Restatement section 187, subdivision (2) is for the court first to determine either: (1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. If neither of these tests is met, . . . the court need not enforce the parties' choice of law. If, however, either test is met, the court must next determine whether the chosen state's law is contrary to a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice of law. If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue . . . ." (Rest., § 187, subd. (2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced, for the obvious reason that in such circumstance we will decline to enforce a law contrary to this state's fundamental policy.

18 Nedlloyd's analysis has been held to apply to consumer adhesion contracts like the one in dispute
19 here. Omstead v. Dell, Inc., 473 F. Supp. 2d 1018, 1023 (N.D. Cal. 2007) (Hamilton, J.) (citing
20 Washington Mut. Bank, 24 Cal. 4th at 918).

21       Contrary to the burden of proof argued by plaintiff, which is actually the burden that applies
22 in a challenge to a forum selection clause,  the burden of proof on choice of law issues is as laid out
23 in Washington Mut. Bank, which holds thus: "if the proponent of the clause [here Alienware]
24 demonstrates that the chosen state has a substantial relationship to the parties or their transaction or
25 that a reasonable basis otherwise exists for the choice of law, the parties' choice generally will be
26 enforced unless the other side [here Oestreicher] can establish both that the chosen law is contrary to
27 a fundamental policy of California and that California has a materially greater interest in the
28

1  determination of the particular issue." 24 Cal. 4th at 917.[2]  Oestreicher does not contest that the first
2  prong of the Nedlloyd test is met—he does not argue that Florida has no substantial relationship to
3  the parties or their transaction or that there is no reasonable basis for the selection of Florida law.
4  The court therefore proceeds to Nedlloyd's second prong.

6      A.    <u>Fundamental Policy of California</u>

7      Oestreicher claims that the application of Florida law to the question of whether the class
8  action waiver is unconscionable would be contrary to California's fundamental policy against class
9  action waivers.[3]  "Courts in California have not hesitated to invalidate class action waivers in the
10 appropriate circumstances." Klussman v. Cross Country Bank, 134 Cal. App. 4th 1283, 1293 (2005)
11 (discussing cases).  Although another court in this district has referred to this policy as "a limited
12 policy against class action waivers," Omstead, 473 F. Supp. 2d at 1024, California courts have held
13 that this policy is fundamental in certain contexts.  In Klussman, 134 Cal. App. 4th at 1298, the court
14 held that "Delaware's approval of class action waivers, especially in the context of a 'take it or leave
15 it' arbitration clause[,] is contrary to fundamental public policy in California."  In Aral v. EarthLink,
16 Inc., 134 Cal. App. 4th 544, 564 (2005), the court held that a class action waiver in the context of a
17 suit by California residents seeking recovery pursuant to the UCL implicated a fundamental policy.
18 Finally, in America Online, 90 Cal. App. 4th at 18, the court held that "[t]he unavailability of class
19 action relief in [the context of that case was] sufficient in and by itself" to preclude the enforcement
20 of a choice of law clause and forum selection clause favoring Virginia law.  Accordingly, an analysis
21 as to whether the class action waiver at issue here implicates a fundamental policy of California
22 requires an analysis of the specific circumstances of this case.  In essence, this reduces to a
23 consideration of whether the class action waiver would be unenforceable under California law.  If
24 so, California's fundamental policy is implicated.

25     The framework for determining the enforcement of class action waivers was set forth in
26 Discover Bank v. Superior Court, 36 Cal. 4th 148 (2005).  That case involved a class action waiver
27 in an arbitration agreement between Discover Bank and one of its credit cardholders.  Discover

UNITED STATES DISTRICT COURT
For the Northern District of California

6

Bank, 36 Cal. 4th at 152. The plaintiff alleged that Discover Bank represented to its cardholders that they would not be assessed late payment fees for payments received on the due date, but Discover Bank actually assessed those fees for payments received after 1:00 p.m. on the due date. Id. The late charge in question was 29 dollars, leading to potential damages that were small to the individual but large in the aggregate. Id. at 153–54. In ruling on Discover Bank's motion to compel arbitration in accord with Discover Bank's cardholder agreement, the California Supreme Court held that class action waivers contained in consumer adhesion contracts are unconscionable when the disputed sums "involve small amounts of damages" and the complaint alleges that "the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money . . . ." Id. at 162–63. This court must therefore determine whether these three indicia of unenforceability are met, i.e., (1) whether the arbitration clause was part of a contract of adhesion, (2) whether disputes implicating the arbitration clause typically involve small amounts of damages, and (3) whether Alienware is alleged to have carried out a scheme to deliberately cheat large numbers of customers out of individually small sums of money.

      The first requirement is clearly met. The contract between Alienware and Oestreicher was presented on a "take it or leave it" basis with no opportunity to negotiate. The second factor, regarding the amount of damages at issue, is somewhat more complicated. The typical case involving an unenforceable class action waiver involves essentially negligible sums of money on an individual basis. See, e.g., id. at 154 ($29); Aral, 134 Cal. App. 4th at 561 (stating that "there may well be a significant number of California consumers who have suffered losses in the range of $ 40 to $ 50"); America Online, 90 Cal. App. 4th at 5 (complaint alleged improper charges of five to twenty-two dollars each). Here, Oestreicher paid over four thousand dollars for his computer. In cases involving comparable sums, other courts have held that class action waivers were enforceable and did not implicate fundamental California policies. For example, in Provencher v. Dell, Inc., 409 F. Supp. 2d 1196, 1202–4 (C.D. Cal. 2006), the court found that no fundamental policy was implicated by an arbitration clause barring class actions where the named plaintiff had "spent over

7

1  $1600 for the Dell computer, including more than $250 for Dell's extended service warranty."
2  Likewise, in Omstead, 473 F. Supp. 2d at 1024, the court held that individual claims of $1,200 to
3  $1,500 were not "small" for the purposes of the Discover Bank analysis.

4  However, the California Court of Appeal has squarely rejected the proposition that sums
5  exceeding $1,000 necessarily fall outside the framework of Discover Bank. As the court explained,
6  "[w]hile $1,000 is not an insignificant sum, many consumers . . . may not view that amount as
7  sufficient to warrant individual litigation, and certainly it is not sufficient to obtain legal assistance
8  in prosecuting the claim." Cohen v. DIRECTV, Inc., 142 Cal. App. 4th 1442, 1452 (2006) (internal
9  quotations omitted). Accordingly, "[d]amages that may or may not exceed $1,000 do not take [a]
10 class action waiver outside a setting in which disputes between the contracting parties predictably
11 involve small amounts of damages." Id. (internal quotations omitted). The court in Cohen expressly
12 rejected the reasoning in Provencher regarding the amount of recovery. Id. at 1455 n.13; see also
13 Douglas v. U.S. Dist. Court for the Cent. Dist. of Cal., ___ F.3d ____, 2007 WL 2069542, at *3 (9th
14 Cir. 2007) (holding that Provencher has been "expressly disavowed"). Additionally, the holding in
15 Omstead appears contrary to holding in Cohen. As in Cohen, the amount at issue here is not
16 insignificant, but also not substantial. Accordingly, the second Discover Bank factor is satisfied.

17 Turning to the final factor, whether Alienware is accused of a deliberate scheme to cheat a
18 large amount of customers, the court in Cohen clarified this standard as well. Specifically, the court
19 held that the question is whether the defendant acted deliberately in order to deprive consumers of
20 money, regardless of whether the alleged scheme was hidden, secret or fraudulent. Cohen, 142 Cal.
21 App. 4th at 1453. Here, Oestreicher alleges that Alienware was aware of material defects in its
22 products, concealed these defects from consumers, and chose to sell defective products rather than
23 correcting the defects, thereby shifting the financial burden onto its customers and increasing its own
24 financial position. Complt. ¶¶ 17, 31–32. If proven, this would constitute a deliberate scheme to
25 cheat consumers.[4] Accordingly, the third Discover Bank factor is satisfied.

27     B.    <u>Materially Greater Interest</u>

1    The next step in the Nedlloyd test is to determine which state has a materially greater interest in the litigation. In determining which state has a greater interest, the court considers factors such as "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties." Application Group, Inc. v. Hunter Group, Inc., 61 Cal. App. 4th 881, 903 (1998).

The fact that Oestreicher has reduced the class size from a nation-wide class to a class of California residents certainly increases California's interest in the litigation, as "[t]he state where a party to the contract is domiciled has an obvious interest in the application of its law protecting its citizens against the unfair use of superior bargaining power." Klussman, 134 Cal. App. 4th at 1299. The fact that the putative class members are California residents and Alienware is a Florida company favors California, as the governmental interest is stronger in protecting the party with inferior bargaining power. An additional factor favoring California is the fact that Oestreicher has brought causes of action pursuant to California consumer protection statutes.

In terms of the circumstances surrounding the contract, "internet or phone purchases from an out-of-California manufacturer result in 'sales transpir[ing] outside of California'" under California law. Omstead, 473 F. Supp. 2d at 1025 (quoting California State Elecs. Ass'n v. Zeos Int'l Ltd., 41 Cal. App. 4th 1270, 1277 (1996)). The place of contracting and the place of performance are therefore in Florida. However, the subject matter of the contract—the allegedly defective computer—is located in California, and California has a strong interest in regulating products shipped into the state. Additionally, Alienware's argument regarding its desire for the uniform application of law to its sales of computers across the country does not defeat the compelling California interests identified by Oestreicher. Klussman, 134 Cal. App. 4th at 1300. In sum, California has a materially greater interest based on the fact that California residents are invoking California consumer protection laws to seek recovery for allegedly defective products shipped into California.

Because Florida law is contrary to California's fundamental policy, and because California

has a materially greater interest in the litigation, the court will apply California law to determine whether the arbitration clause is enforceable.

II.     Arbitrability Under California Law

Under California law, a plaintiff must show the presence of both procedural and substantive unconscionability in order for a court to exercise its discretion to refuse to enforce a contractual provision. Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000). "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id. As discussed above, the arbitration provision is unconscionable with respect to the class action waiver. In light of the fact that the presence of a contract of adhesion is one of the indicia of unenforceability in Discover Bank, the determination that the provision falls within the Discover Bank framework satisfies both the procedural and substantive unconscionability requirements. In other words, the adhesive nature of the contract provides the minimal level of procedural unconscionability to render a contract unenforceable if the contract also contains a substantively unconscionable class action waiver. Gatton v. T-Mobile USA, Inc., 152 Cal. App. 4th 571, 586–88 (2007). The class action waiver is therefore unconscionable and unenforceable.

Oestreicher further asserts that the agreement's chosen method of arbitration—arbitration before the National Arbitration Forum (NAF)—is independently unconscionable.

A.     Procedural Unconscionability

"The California Supreme Court has consistently reiterated that the procedural element of an unconscionable contract generally takes the form of a contract of adhesion." Id. at 582 (internal quotations omitted). The California Supreme Court has adopted the following definition of "contract of adhesion": "'a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" Graham v. Scissor-Tail, Inc., 28 Cal. 3d 807, 817 (1981) (quoting Neal v.

State Farm Ins. Cos., 188 Cal. App. 2d 690, 694 (1961)). In the consumer context, California courts "have routinely found the procedural element [of unconscionability] satisfied where the agreement containing the challenged provision was a contract of adhesion." Gatton, 152 Cal. App. 4th at 582. There is no genuine dispute that the contract at issue here was one of adhesion, as Oestreicher clearly had no opportunity to negotiate the terms of the standardized agreement.

In addition to the inquiry as to adhesion, courts look to the presence of surprise in determining wether a contract is procedurally unconscionable. "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1532, (1997) (internal quotations omitted). Here, Alienware claims that Oestreicher had repeated notice of and access to the terms and conditions during the time he spent shopping for and customizing his computer online, and that he had an opportunity to cancel his purchase within thirty days. In response, Oestreicher claims that surprise exists because Alienware does not require consumers to access or review the arbitration agreement to effectuate a purchase. Oestreicher asserts that Alienware could easily have put a process in place to ensure that customers were presented with the "best opportunity" to review the terms. Oestreicher cites no legal authority in support of the assertion that companies are required to ensure that customers actually read contracts before agreeing to them. The court sees no reason to establish such a rule now, particularly in the context of high-end products such as personal computers where consumers are expected to shop with care.

Oestreicher has not established surprise. However, because the contract at issue is a consumer contract of adhesion, Oestreicher has established "a minimal degree of procedural unconscionability." Gatton, 152 Cal. App. 4th at 585. Because Oestreicher has made only the minimal showing, "[i]f the challenged provision does not have a high degree of substantive unconscionability, it should be enforced." Id. As discussed above, the class action waiver constitutes such a high degree of substantive unconscionability. Accordingly, the court considers whether the NAF provision is substantively unconscionable.

11

B.    Substantive Unconscionability

A contract is substantively unconscionable if it produces "overly harsh or one-sided results." Armendariz, 24 Cal. 4th at 114 (internal quotations omitted). California courts require a "modicum of bilaterality" in an arbitration agreement. Id. at 117. Some degree of non-mutuality is acceptable so long as the non-mutuality is justified by "business realities." Id.

Oestreicher asserts that the NAF is an industry-friendly forum that is structurally biased against consumers. Oestreicher raises four discrete arguments in support of this contention. First, Oestreicher cites NAF rule 29(B), which limits allowable discovery to an amount "commensurate with the amount of the Claim . . . ." Because individual claims are relatively small, this rule will result in a commensurately small amount of allowable discovery, creating a disadvantage to plaintiffs seeking to prove concealment on the part of a corporate defendant. Second, Oestreicher cites an advertisement from the NAF identifying the company as "the alternative to the million dollar lawsuit" and promoting "limited claims" and "limited awards." Opp. Br., Exh. A. Third, Oestreicher cites a latter from the NAF Director of Arbitration dated April 16, 1998 warning that "the 'class action' bar" is preparing for litigation arising out of the Year 2000 bug. Id., Exh. B. Finally, Oestreicher cites an additional NAF letter from September 1996, stating that arbitration provisions can minimize lawsuits and avoid large jury verdicts. Id., Exh. C. The court notes that each of these documents is attached as an exhibit directly to Oestreicher's opposition brief, rather than an authenticated exhibit to a sworn declaration. This, coupled with the fact that these documents are several years old, renders this evidence of little value.

In addition to these particular arguments, the parties spend a great deal of time alternately condemning and singing the praises of NAF. Not surprisingly, both sides cite a handful of cases in which courts have determined that the NAF was either an appropriate or inappropriate forum under particular circumstances. Apart from its categorical assault on the NAF as an allegedly industry-friendly forum, however, Oestreicher makes no specific, compelling arguments showing that the NAF would be inappropriate in this action. Accordingly, Oestreicher has made only a weak showing of non-mutuality, and in light of Oestreicher's minimal showing of procedural

unconscionability Oestreicher has failed to establish that the NAF provision is unenforceable.

### III. Preemption

Alienware argues that, regardless of whether the arbitration clause is enforceable under California law, the provision must be enforced because the FAA preempts state law on that issue. This assertion merits little discussion. As Alienware readily admits, the Ninth Circuit has squarely held that "[b]ecause unconscionability is a generally applicable contract defense, it may be applied to invalidate an arbitration agreement without contravening § 2 of the FAA." Ting, 319 F.3d at 1150 n.15. The Ninth Circuit reached this conclusion based on "well-settled Supreme Court precedent." Id. Alienware argues that the framework of Discover Bank relating to class action waivers was not developed until after Ting was decided. However, unenforceability based on class action waivers is merely a subspecies of unenforceability based on unconscionability. The fact that not all class action waivers fit into the Discover Bank framework does not leave the doctrine open to preemption any more than the fact that not all contracts are unconscionable. Although one court in this district has identified this issue as a "substantial question of law to be resolved on appeal" justifying a stay of proceedings, Winig v. Cingular Wireless LLC, No. C-06-4297 MMC, 2006 WL 3201047, at *2 (N.D. Cal. Nov. 6, 2006) (Chesney, J.), no party to this action has requested a stay pending appeal on this issue. Accordingly, the court will follow Ninth Circuit and California precedent and hold that the FAA does not preempt the rule in Discover Bank.

### IV. Severability

At the very least, the provision barring class actions cannot be enforced. Oestreicher additionally requests that the entire arbitration provision be declared unenforceable. Alienware agrees that this case should not be referred to arbitration if the class action waiver is unenforceable. Accordingly, the court does not reach the issue of whether the class action waiver is severable. Therefore, the entire arbitration clause is invalid.

13

CONCLUSION

For the foregoing reasons, Alienware's motion to compel arbitration and stay proceedings is DENIED.

IT IS SO ORDERED.

Dated: August 10, 2007

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. Unless otherwise indicated, all facts are taken from the parties' briefs.

2. Oestreicher cites America Online v. Superior Court, 90 Cal. App.4th 1, 11 (2001), for the proposition that in a case such as this the party seeking to enforce a forum selection clause has the ultimate burden of proof as to enforceability. However, it is not the forum selection clause the parties have raised in this litigation; it is the choice of law provision. Plaintiff appears to confuse the two or at least weave them together. Even America Online court treats the two separately, noting that AOL's forum selection clause was accompanied by a choice of law provision. The court then proceeded to do a separate analysis of the choice of law issue. Although that analysis did not follow the traditional formula laid out in Nedloyd, the court cited to both Nedloyd and Washington Mut. Bank, and concluded its opinion was consistent with those cases. This court finds that it is proper to apply the choice of law principles laid down in those cases.
    Additionally, although the agreement contains the extraordinary provision that Florida law shall govern "without regard to conflicts of laws principles," Lewis Dec. Exh. A ¶13, the court does not consider itself boundy by this provision and therefore declines to ignore the legal principles applicable to this case.

3. Oestreicher raises two additional conclusory arguments related to fundamental policies of California. First, Oestreicher argues that the provision violates the CLRA's anti-waiver provisions. However, the Ninth Circuit has held that the CLRA is preempted by the FAA in cases such as this one. Ting v. AT&T, 319 F.3d 1126, 1147–48 (9th Cir. 2003); see also Provencher, 409 F. Supp. 2d at 1206 n.13. Second, Oestreicher claims that Florida law is contrary to California's fundamental policy regarding unconscionability. Because Oestreicher raises no specific arguments distinguishing California and Florida law in this regard, the court rejects this argument.

4. Alienware cites language in Omstead, 473 F. Supp. 2d at 1025, in which the court held that the third Discover Bank factor was satisfied because "[i]t makes no sense to claim that Dell had a 'deliberate scheme' to manufacture four computer models that did not work or that Dell would deliberately sell defective computers—under warranty—to thousands of customers." The court does not find this reasoning persuasive. Oestreicher explicitly alleges that Alienware decided to sell defective computers rather than suffer the costs of delaying the release of its products so that the defects could be corrected. Complt. ¶ 17. Accordingly, there may have been some financial benefit in selling defective products to the detriment of consumers.