1  Jonathan D. Selbin (SBN 170222)
   Kristen E. Law (SBN 222249)
2  LIEFF, CABRASER, HEIMANN & BERNSTEIN LLP
   275 Battery Street, 30th Floor
3  San Francisco, California 94111-3336
   Telephone: (415) 956-1000
4  Facsimile: (415) 956-1008

5  David P. Meyer (Ohio Bar No. 0065205) admitted *pro hac vice*
6  Patrick G Warner (Ohio Bar No. 0064604) admitted *pro hac vice*
   Matthew R. Wilson (Ohio Bar No. 0072925) admitted *pro hac vice*
7  DAVID P. MEYER & ASSOCIATES CO., LPA
   1320 Dublin Road, Suite 100
8  Columbus, Ohio 43215
   Telephone: (614) 224-6000
9  Facsimile: (614) 224-6066

10 *ADDITIONAL COUNSEL ON SIGNATURE PAGE*

11 Attorneys for plaintiff Harry Oestreicher and the putative Class

12              UNITED STATES DISTRICT COURT

13           FOR THE NORTHERN DISTRICT OF CALIFORNIA

14

15 HARRY OESTREICHER, on behalf of       )   Case No. 3:07-CV-00512-MHP
   himself and all others similarly situated, )
16                                         )   **SECOND AMENDED COMPLAINT**
                                           )
17              Plaintiff,                 )   **CLASS ACTION**
                                           )
18          v.                             )
                                           )   **(1) CONSUMER LEGAL REMEDIES
19 ALIENWARE CORPORATION and DOES          )   ACT;**
   1-100, inclusive,                       )
20                                         )   **(2) BUSINESS & PROFESSIONS CODE
                                           )   SECTIONS 17200 & 17500**
21              Defendants.                )
                                           )   **(3)  FRAUDULENT CONCEALMENT/
22                                         )   NONDISCLOSURE; and**
                                           )
23                                         )   **(4) UNJUST ENRICHMENT**
                                           )
24                                         )   **DEMAND FOR JURY TRIAL**
                                           )
25                                         )
                                           )
26                                         )
27 _____

28

743642.3

1.     Plaintiff Harry Oestreicher ("Representative Plaintiff"), individually and on behalf of all others similarly situated alleges as follows.

## INTRODUCTION

2.     Plaintiff brings this action for actual damages, equitable relief (including restitution, injunctive relief, and disgorgement of profits), civil penalties, punitive damages, and all other available relief on behalf of himself and all similarly-situated individuals and entities in California (the "Class") who purchased an Alienware Corporation ("Alienware") Area-51 laptop computer model m5500, m5550, m5700, m7700, and/or all other comparably-designed Area-51 laptops ("Affected Computers").

3.     All of the claims asserted herein arise out of Alienware's misconduct in connection with the design, manufacture, warranting, advertising and selling of the Affected Computers

4.     All of the claims asserted herein relate only to the Affected Computers' hardware.

5.     On information and belief, Alienware began designing, manufacturing, warranting, marketing, advertising and selling the Affected Computers to thousands of consumers throughout California commencing in or around November 2004.

6.     The Affected Computers are designed and manufactured with the following uniform and inherent design defects (collectively, the "Defects"):  (1) inadequacy of the heat management system, including the copper heat distribution rods, metal heat distribution fins, and fans; and (2) improper placement of the air intake vent.  As a result, the Affected Computers overheat and fail well before the end of their expected useful life.

7.     On information and belief, Alienware knew, or was severely reckless in not knowing, at or before the time that it sold the first unit, that the Affected Computers contained the Defects and that the Defects would lead to premature failure of the Affected Computers.  Alienware had sole and exclusive possession of this knowledge and information, which is detailed more fully below.

8.     Notwithstanding this knowledge, Alienware affirmatively and specifically touted in its marketing and advertising the advanced cooling systems designed into the Affected Computers.

9.     At all times, in every place, and in every communication, Alienware concealed from and/or failed to disclose to Plaintiff, the Class, and everyone in the chain of distribution, the Defects in

743642.3

the Affected Computers, and failed to remove the Affected Computers from the marketplace or take adequate remedial action.  Rather, Alienware sold and serviced the Affected Computers even though it knew, or was reckless in not knowing, that the Affected Computers were defectively designed, would prematurely fail and would ultimately result in Plaintiff's and Class members' inability to use their Affected Computers for their intended purpose and during the time in which consumers, including Plaintiff, reasonably expected they would have use of the Affected Computers

10.     Plaintiff is informed and believes that Alienware restricted the access of third party repair centers to its parts so that it would obtain additional profits from repairs necessitated by the Defects.

11.     As a consequence of Alienware's knowing and fraudulent concealment of the Defects, Plaintiff and the Class purchased and currently own defective computers and have incurred actual damages.

## THE PARTIES

12.     Representative Plaintiff Harry Oestreicher is a resident of San Francisco, California.  On or about June 30, 2005, Plaintiff Oestreicher purchased a new Alienware Area-51 model m7700 laptop computer online from www.alienware.com for $4,050.00 plus $99.00 shipping.

13.     Defendant Alienware Corp. ("Alienware") manufactures high-performance desktop, notebook, media center, and professional computer systems.  Alienware is headquartered at 14591 SW 120 Street, Miami, Florida 33186-8638.

14.     The true names and capacities, whether individual, corporate, associate, representative or otherwise, of the defendants identified herein as Does 1 - 100 inclusive are unknown to Plaintiff, who therefore sues these defendants by said fictitious names.  Plaintiff will amend this complaint to allege the true names and capacities of Does 1 - 100 when they have been ascertained.  Does 1 -100 are in some manner legally responsible for the wrongs and injuries alleged in this complaint and all allegations against Alienware are alleged against Does 1 - 100.

15.     Each of the Defendants acted as the co-conspirator, agent, joint venturer or alter-ego with respect to all acts, violations, and common course of conduct alleged herein, or is otherwise liable.

16.    The acts alleged in this Complaint have been committed by Defendant(s) and were authorized, ordered or done by their officers, agents, employees or representatives while actively engaged in the management of the Alienware's businesses.

## JURISDICTION

17.    This Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (1) there are 100 or more members in the Plaintiff's proposed class; (2) at least some members of the proposed class have a different citizenship from Alienware; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

18.    This court has personal jurisdiction over Alienware because Alienware has purposefully availed itself of the privilege of conducting business activities within the State of California by manufacturing, warranting, advertising and selling computers to Plaintiff and the Class members and, further, generally maintained systematic and continuous business contacts with the State of California.

## VENUE

19.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Northern District when Alienware sold, marketed, distributed and/or warranted—and Plaintiff purchased—one or more of the computers at issue here.

## APPLICATION OF CALIFORNIA LAW

20.    California law applies to the claims and issues asserted herein.  Plaintiff, who is a California resident, seeks damages and equitable relief on behalf of himself and all other California residents similarly situated, under the laws of the State of California.

21.    California has significant contacts and/or a significant aggregation of contacts to the claims asserted by Plaintiff and all Class members.

22.    California has a materially greater interest than any other State in enforcing the rights and remedies granted to California consumers under the California laws invoked in this Complaint.  These rights and remedies further strong fundamental public policies of the State of California.

743642.3

1

2

**FACTUAL ALLEGATIONS**

3          23.      Founded in 1996 by Nelson Gonzalez and Alex Aguila, Alienware manufactures and

4   sells high-performance desktop and laptop computers.  Alienware claims to have earned an unparalleled

5   reputation by creating best-of-breed products that offer superb, uncompromising quality.

6          24.      Alienware notebook computers (including the Affected Computers) are targeted to

7   customers who require high-performance computer systems and who are willing to pay a premium for

8   this type of machine.  Alienware aims to reach video game enthusiasts (or "gamers") in particular,

9   frequently advertising in PC Gamer magazine[1] and promising that "[p]ower hungry gamers and

10  enthusiasts alike will benefit from the Area-51 m7700's removable video card modules featuring the

11  new NVIDIA GE Force Go 6800, today's fastest mobile graphic card."[2]  As Alienware's website

12  boasted in 2004:

13                  Take it from a company built by gamers, we have the expertise to help you

14                  configure an awesome Gaming PC that will elevate your gaming

15                  experience…Our Gaming PC's feature cutting-edge technology and are

16                  optimized for performance and designed to deliver ultra-smooth gameplay

17                  at maximum resolutions. Finally, you can take advantage of the latest

18                  game technology; the colors, pixel shaders, shadow detail, and filters

19                  which bring game worlds to life![3]

20

21          25.       Typical customers of the Affected Computers are individuals or small-to-medium sized

22  businesses that require optimum performance and are willing to pay a premium to obtain it.

23          26.      Alienware offers three lines of notebook computers: the Area-51, Aurora, and Sentia.

24  The Affected Computers fall within the Area-51 line.

25          27.      Plaintiff is informed and believes that Alienware began marketing and selling the

26  Affected Computers at issue in this case starting with the m7700 in November 2004, that Alienware

27

28

---

[1] *See e.g.* sample advertisements attached as Exhibit 1.
[2] November 8, 2004 Press Release, attached as Exhibit 2.

743642.3

introduced the m5500 model in or around March 2005, introduced the m5700 model in or around October 2005, and introduced the m5550, m5750, and Superman Returns models in or around July 2006.

28.     The Affected Computers fail to perform as reasonable consumers would expect in that the heat management system is inadequate as a result of the Defects.  As a result, the Affected Computers are prone to premature failure as a result of overheating, particularly (but not solely) when used for the very high-performance functions for which they were marketed and sold and for which they commanded a premium price.  When the Affected Computers overheat, they randomly and unexpectedly slow down, shut down, fail to power up properly, or fail to function at all, leaving the computers unusable.

29.     Alienware failed to adequately design, manufacture, and/or test the Affected Computers to ensure that they were free from the Defects.

30.     Plaintiff Oestreicher purchased a new Alienware Area-51 model m7700 laptop computer online from www.alienware.com for $4,050.00 plus $99.00 shipping on or about June 30, 2005.  Oestreicher purchased the Area-51 model m7700 because he wanted a high-performance machine to run high-end graphics programs, digital audio, and the like.  Oestreicher chose the  Area-51 model m7700 because he wanted the "best of the best." Oestreicher expected the Area-51 model m7700 to perform better and last longer than a less expensive computer.

31.     Oestreicher's computer came with a 90-day warranty at no charge beyond the purchase price.  Extended warranties of 6 months, 1 year, or 2 years were available for an additional charge.  Oestreicher selected the standard 90-day warranty.  Notwithstanding the short warranty period, Plaintiff Oestreicher reasonably expected that his new Alienware computer would function properly for at least three to four years without the need for him to expend additional money to ensure it functioned normally.

---

[3] *See* Screenshot from Alienware's website, attached as Exhibit 3, available online at http://web.archive.org/web/20040920082824/http://www.alienware.com/

32.     At all times relevant, Plaintiff Oestreicher has used his Area-51 m7700 in a foreseeable manner and in the manner in which it was intended to be used.  Indeed, Oestreicher was careful to make sure that his Area-51 model m7700 was kept in optimal condition by using it on a flat desk in a cool room as opposed to using it on his lap or bed.

33.     In December 2005, Oestreicher's m7700 computer began overheating, eventually shut down altogether, and has since never restarted.  At that time, Oestreicher contacted Alienware in an attempt to get his computer repaired.  Alienware stated that it would attempt to troubleshoot the problem for a charge, or assist over the phone for $39 per phone call.  Because he had already spent more than $4,000.00 to purchase the computer, and is himself a knowledgeable computer professional, Oestreicher chose not to pay for additional services from Alienware.

34.     Oestreicher contacted Alienware again in March of 2006, requesting that Alienware fix the machine at no cost, which Alienware declined to do.

35.     Oestreicher requested to purchase parts for the computer so that he could have it fixed by a repair shop of his choosing, and was informed by Alienware that it does not allow outside parties to purchase parts for their computers.

36.     As a result, Oestreicher paid over $4,000.00 for a purportedly premium, high-performance computer that he reasonably expected would function properly for 3 to 4 years, and instead received a defective computer that functioned for approximately six months.  Alienware has refused to repair the computer for free, has sought to charge Oestreicher to repair it, and has refused to even sell him the required parts so he can have it repaired elsewhere.

37.     Had Plaintiff Oestreicher known that his Area-51 model m7700 would overheat and fail well before three years of use, he would not have purchased it or would have paid less for it.

## **The Uniform Defects In The Affected Computers**

38.     Computers generally, and laptops in particular, must have an efficient means for transferring heat away from the active components of the machine to prevent overheating and failure.

The purpose of a heat removal system—or heatsink—is to gather heat from the central processing unit and distribute it outside of the machine.

39.   During the time the Affected Computers were sold, processing speed was a key feature and marketing tool for laptop computers, and manufacturers touted, and competed with respect to, such speed.  As Alienware and its competitors raced to create faster and faster laptop computers, cooling issues became increasingly important.  This is so because, as a general matter, the faster a computer processes data, the higher its internal temperature.

40.   Essentially, there are three processes that should be considered when designing a heatsink: thermal conductivity, thermal radiation, and thermal convection.  The first is a measure of how well a particular metal can absorb and transmit heat within itself.  The second concerns how well a metal performs in emitting forms of radiation - heat being one of them.  The third is convection, which is how well the heatsink transfers heat to another object, in this case outside air.  Heatsinks must be designed in such a way that air can easily and quickly float through the fan, and reach all cooling elements.  The heatsinks installed in the Affected Computers are not adequate to remove the heat produced by the processor, battery and other components of these Affected Computers.

41.   The heat removal system for a laptop computer is not unlike the radiator system in a motor vehicle.  In a vehicle, the engine generates heat as it runs.  Heat from the engine is transferred to the radiator via circulating fluid. The radiator is then cooled by moving air.  In the Affected Computers at issue here, heat is generated by the various processors and circuit boards installed in the computer.  These processors and circuit boards are equivalent to the car's engine in that they generate heat.  Like the engine, the working components of the Affected Computer will fail if they overheat.

42.   Each Affected Computer is equipped with a heat removal system that includes three related components: (1) copper rods intended to draw heat away from the heat-generating components and transfer that heat to one or more sets of metals fins ; (2) the metal fins themselves; and (3) one or more small fans designed to move air across the fins to disseminate the heat collected there.  In the heat removal system, the copper rods are equivalent to the fluid in an engine.  The metal fins are equivalent

to the radiator. And the fans serve the same purpose—to move air—in both applications.  Photographs depicting the components described in this Paragraph are attached as Exhibit 4.

43.     An expert examination of the Affected Computers reveals that their heat removal systems are uniformly inadequate.  To be effective, air must be able to circulate easily through the computer to carry heat from the metal fins outside the machine.  If the air flow is restricted for any reason, heat cannot transfer efficiently, and the internal temperature of the computer increases—sometimes dramatically.  In the Affected Computers, air flow is restricted under normal and foreseeable use conditions in two distinct ways.  First, the air intake for the fan is positioned on the bottom of the computer such that it will be completely blocked or severely restricted if the machine is resting on a conformable surface, such as a person's lap, a sofa, or a bed. Photographs depicting the improper placement of the fan are attached as Exhibit 5.  Second, unbeknownst to the user, the internal metal fins collect lint and other debris over time, severely blocking airflow through the fins and inhibiting heat transfer.  A photo depicting lint on the metal fin component of the heat removal system is attached as Exhibit 6.

44.     Alienware was well aware of the need for adequate cooling within the Affected Computers, especially given Alienware's introduction of a faster—and hotter—processor in the m7700 in November 2004.  Instead of developing a suitably robust heat removal system prior to the product launch, Alienware passed the burden of the inadequate system to Plaintiff and Class Members and has since denied the problem when confronted by unhappy customers.  Subsequently released models among the Affected Computers at issue here share the same inadequate and defectively designed heat removal system as the m 7700.

45.     As a result of the Defects, through normal use, the heat removal system becomes less efficient due to blocked airflow, both at the air duct and through the accumulation of lint and debris in the fins, ultimately causing the Affected Computers to fail.

46.     The failure resulting from the Defects is evidenced by slowdown, unexpected shutdown, and failure to boot.

47.     These Defects are common to, and uniform in, the Affected Computers.

SECOND AMENDED COMPLAINT

743642.3

48.     These Defects are substantially likely to prevent the Affected Computers from functioning at all, much less providing the high-performance for which they were marketed and sold, under normal use conditions and well before the end of their expected useful life.

49.     These Defects render the Affected Computers unfit for the ordinary purpose for which such goods are sold at the time that they were sold to Plaintiff and the other Class members.

50.     These Defects have necessitated, and will continue to necessitate, costly repairs to the Affected Computers.

## Alienware's Knowledge Regarding The Defects

51.     Before it sold the first unit, Alienware knew, or was reckless in not knowing, that the cooling system in the Affected Computers was inadequate and would lead to premature failures, especially when used for the high-performance functions for which it was sold.

52.     Alienware also was made aware of the Defects through numerous consumer complaints. Because of the Alienware's failure to resolve this widespread problem, consumers have taken to posting their complaints on the internet.  Excerpts from various websites are included in Paragraph 60, below.

53.     Alienware is and has been aware of the scope of the problems with the Affected Computers but has failed to take corrective action.  Instead, Alienware has responded by denying consumer complaints and has sought to "run out the clock" on the warranties that accompanied the Affected Computers.  Alienware has failed to even notify its customers of the problems or advise them to have their Affected Computers inspected to repair the Defects.

54.     At Alienware's recommendation, Class members incur out of pocket expenses to repair or replace components or the Affected Computers as a whole when the symptoms of the Defects manifest outside the Alienware warranty.

55.     To this day, Alienware continues to conceal material information from Plaintiff, the Class, and the public about the Defects in the Affected Computers.

## Plaintiff's And Class Members' Expectations and Experiences

743642.3

56.     When he purchased his computer, Plaintiff Oestreicher reasonably expected his computer to function properly for at least three to four years without the need to expend additional money to obtain the expected useful life.

57.     Reasonable consumers expect that laptop computers like the Affected Computers will function properly for at least three to four years, and do not expect that they will come with an inherent defect that results in failure well before that expected lifetime and requires out-of-pocket expenditure of hundreds of dollars to obtain the expected useful life.

58.     Because of the Defects, and as detailed in Paragraphs 30-37, above, Plaintiff Oestreicher's computer failed well before the end of its expected useful life.

59.     As a result of the Defects alleged herein, Plaintiff has experienced catastrophic failure of his computer, did not get what he paid for, and incurred actual damages.

60.     Plaintiff's experiences are by no means isolated or unique.  Countless essentially identical complaints with respect to these same Affected Computers can be found all over the internet. The following messages are just a few verbatim excerpts from www.cnet.com, www.pcworld.com, and www.notebookreview.com:

> Alienware REFUSES to stand behind the hardware they sell. Their goal is
> to get your money, and once that happens, they could care less about what
> happens to their systems.  I spent OVER $4,000 one year ago for the best
> system money could buy.  I ended up getting an easy-bake oven that fails
> every 3 months on average.[4]
>
> *   *   *
>
> The supervisor, Manuel, comes on after another 5 minutes on hold.  I give
> him an earful and then ask why the two parts are broken.  The answer?
> Heat.  The computer basically cooked itself.  I'm out almost another 1,000

---

[4] http://reviews.cnet.com/Alienware_Area_51m_7700/4864-3121_7-31456556.html?ctype=msgid&messageSiteID=7&messageID=1791788&cval=1791788&tag=uolst

1   dollars because the 3,000 dollar laptop I purchased runs too hot for its own

2   box.  Frustrated and helpless, I gave Manuel my credit card info...[5]

3                                      *       *       *

4   Our system overheated out of the box.  We have returned it 3 times to be

5   fixed.  They either say that the problem was not duplicated within a small

6   period of idle running time (no applications being attempted and probably

7   in a refrigerated room) or they say that they have fixed it with no

8   explanation of what was fixed.  Frankly, the case has poor ventilation and

9   the fans do not always work.  This is not an isolated case, based on my

10  internet researching of other reports.  Our warranty states that they will fix

11  the problem, but if they can't then they will replace it or refund our money.

12  They refuse to acknowledge the problem, therefore they say there is

13  nothing to fix.[6]

14                                     *       *       *

15

16  With the Area-51 M7700 they went too far in packing all this power into a

17  small package.  The…thing keeps overheating, and THAT ultimately

18  breaks down the hardware.[7]

19                                     *       *       *

20  ... the Alienware was overheating so bad and shutting down that the only

21  way I could use it was to put a 10 lbs steel barbell weight under it.  This

22  would work for about 2 hours where I would have to swap the weight with

23  a fresh one that I had sitting in the freezer.[8]

24                                     *       *       *

25

26  _____
    [5] http://reviews.cnet.com/Alienware_Area_51m_7700/4864-3121_7-
27  31456556.html?ctype=msgid&messageSiteID=7&messageID=2188938&cval=2188938&tag=uolst
    [6] http://reviews.cnet.com/Alienware_Area_51m_7700/4864-3121_7-
28  31456556.html?ctype=msgid&messageSiteID=7&messageID=1961156&cval=1961156&tag=uolst
    [7] http://forums.pcworld.com/forums/viewtopic.php?p=7868
    [8] http://forum.notebookreview.com/archive/index.php?t-44425.html

743642.3

**Fraudulent Concealment Allegations**

61.     Plaintiff is a consumer who purchased his Affected Computer from Alienware's website. Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Alienware responsible for engineering design and analysis, marketing and advertising, or sales of the Affected Computers.  Alienware necessarily is in possession of all of this information.

62.     Plaintiff's claims arise out of Alienware's fraudulent concealment of the Defects.  To the extent that Plaintiff's claims arise from Alienware's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiff bases his claims.  He alleges that at all relevant times, including specifically at the time he purchased his Affected Computer, Alienware knew, or was reckless in not knowing, of the Defects; Alienware was under a duty to disclose the Defects based upon its exclusive knowledge of them, its affirmative representations about them, and its concealment of the Defects; and Alienware never disclosed the Defects to the Plaintiff or anyone at any time or place or in any manner.

63.     Plaintiff makes the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Alienware:

        a.     *Who*:  Alienware concealed the Defects from Plaintiff, the Class, and everyone in the chain of distribution.  Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those individuals at Alienware responsible for such decisions.

        b.     *What*:  Alienware knew, or was reckless in not knowing, and concealed the fact that the heat removal systems in the Affected Computers are defective and prone to increasing inefficiency over time, resulting in premature failure of the Affected Computers.

        c.     *When*:  Alienware concealed this material information at all times, starting no later than November 2004, continuing through the time of sale, and on an ongoing basis, and continuing to this day.  Plaintiff is aware of no time at which Alienware disclosed this material information to anyone outside of Alienware.

743642.3

d.      **Where**:  Alienware concealed this material information in every communication it had with Plaintiff, the Class, and everyone in the chain of distribution.  Plaintiff is aware of no document, communication, or other place or thing, in which Alienware disclosed this material information to anyone outside of Alienware.  Such information appears in no sales documents, no displays, no advertisements, no warranties, no owner's manual, nor on Alienware's website.

e.      **How**:  Alienware concealed this material information by not disclosing it to Plaintiff, the Class, or anyone in the chain of distribution at any time or place or in any manner, even though it knew this information and knew that it would be important to a reasonable consumer.

f.      **Why**:  Alienware concealed this material information for the purpose of inducing Plaintiff and Class members to purchase the Affected Computers and at full price, rather than purchasing competitors' computers or paying Alienware less for them.  Had Alienware disclosed the truth, Plaintiff (and reasonable consumers) would not have bought the Affected Computers, or would have paid less for them.

### Affirmative Statements Regarding Product Characteristics

64.     Alienware made the following affirmative statements and partial representations about products within the Area-51 line of notebook computers:

Website

At various times since 2003, Alienware's website has included the following partial representations:

- Higher performance to do more in less time.

- *The Area-51m is a powerful machine which requires powerful cooling. All Area-51m systems come with a custom made heat sink specifically designed for high speed processors. Sticking with Alienware® tradition, each unit is packed full of fans and exhaust units to ensure optimum performance* (emphasis added).[9]

---

[9]  *See* Screenshot from Alienware's website, attached as Exhibit 7, available online at http://web.archive.org/web/20030801073619/www.alienware.com/system_pages/area-51m.aspx

SECOND AMENDED COMPLAINT

743642.3

1    •   The Area-51m is equipped with a CPU cooling system featuring individual

2        exhaust vents, heat-sink and fan.

3    •   Thanks to the enormous amount of performance provided by its components, the

4        Area-51m is a potent solution for personal Digital Video Editing. Perhaps the

5        most critical aspect of this application is the amount of processing power

6        available. Using the latest Pentium 4 processors with Hyper-Threading

7        technology, the Area-51m is able to handle even the most demanding

8        applications. The latest graphics technology is also utilized to ensure that there are

9        no performance bottlenecks when completing a project. Lastly, the ability to

10       equip the system with a phenomenal 2GB of PC3200 DDR memory gives users

11       the ability to have several projects or applications open at once without running

12       the risk of depleting system resources. Although you might not be a professional

13       video editor, you can be confident that you're using professional equipment.

14   •   With m5550's battery control you can save battery by ramping down CPU, GPU

15       power and lowering the cooling system usage when you don't need it. Play

16       against the ropes so you have the juice to see your movie to its finale.

17   •   Balancing high performance technology within a thin and light design, for users

18       that demand power and portability. [describing the Area-51 m5550]

19   •   The ideal high-performance notebook focused on providing an elite multimedia

20       experience for all users. [describing the Area-51 m5750]

21   •   New PCI-Express mobile with extreme performance. Featuring a full-speed

22       desktop processor in a mobile form-factor. [describing the Area-51 m7700]

23   •   Considering the amount of performance the Area-51 m9750 pumps out, *a light

24       chassis that can manage thermals efficiently and has plenty of strength to protect

25       everything inside is essential*. Steel or plastic simply won't cut it. That's why the

26       Area-51 m9750 features magnesium alloy, which is 75% lighter than steel and

27

28

provides better rigidity than plastic to deliver the optimum solution (emphasis added).

Print Advertisements[10]

- Custom-built and optimized for high-performance PC gaming, Alienware systems deliver unrivaled performance with the highest-detail possible and ultra-smooth gameplay. Incorporating state-of-the-art components, innovative engineering and design, and providing unprecedented customer service, Alienware systems offer the ultimate gaming experience.  Immerse yourself in a new level of realism, whether you are defeating evil enemies, building your own empire, or conquering new worlds online.

Press Releases[11]

- Alienware m 7700 mobile desktop that delivers the power of a high-performance desktop in a conveniently portable platform.
- [Alienware's m 7700 offers] the perfect blend of desktop power and portability.
- [T]he Area 51 m 7700 provides travelers, gamers, college students, military personnel, and other mobile users the perfect way to enjoy all of their media wherever they need to go.
- With a Windows XP Media Center Edition 2005 powered Area-51 m 7700 mobile desktop, [Microsoft's and Alienware's] mutual customers can be assured of the seamless and innovative digital entertainment experiences regardless of their location.

65.    While representations like "high-performance" and "the perfect blend of desktop power and portability" may sound like vague and highly subjective claims as opposed to specific, detailed factual assertions, such phrases do have a specific factual meaning in the context of the laptop computer market.  If a seller promises desktop performance in a laptop application, the laptop must be able to

---

[10] Copies of the excerpted advertisement is attached as Exhibit 8.
[11] Copies of the excerpted press releases are attached as Exhibit 2 and Exhibit 9.

SECOND AMENDED COMPLAINT

743642.3

perform the promised functions without overheating to the point of an uncommanded slow down, shut down or failure.

## STATUTES OF LIMITATION

66.   **Discovery Rule**  The causes of action alleged herein accrued upon discovery of the defective nature of the Affected Computers.  Because the defects are latent, and Alienware took steps to actively conceal them, among other reasons, Plaintiff and members of the Class did not discover and could not have discovered the defects through reasonable and diligent investigation.  Moreover, reasonable and diligent investigation into the cause of the failed computers did not and could not reveal a factual basis for a cause of action based on Alienware's failure to disclose/concealment of the defects.

67.   **Fraudulent Concealment Tolling**  Any applicable statutes of limitation have been tolled by Alienware's knowing and active concealment and denial of the facts as alleged herein, which concealment is ongoing.  Plaintiff and the Class have been kept ignorant by Alienware of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiff and members of the Class could not reasonably have discovered the true, latently defective nature of the Affected Computers.

68.   **Estoppel**  Alienware was and is under a continuous duty to disclose to the Plaintiff and the Class the true character, quality, and nature of the Affected Computers.  Alienware knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Affected Computers, which concealment is ongoing.  Plaintiff reasonably relied upon Alienware's knowing, affirmative, and/or active concealment.  Based on the foregoing, Alienware is estopped from relying on any statutes of limitation in defense of this action.

## ALIENWARE'S TERMS AND CONDITIONS

69.   Alienware purports to unilaterally apply Terms and Conditions to the sale of the Affected Computers.  These Terms and Conditions constitute a one-sided, exculpatory contract of adhesion which operates to insulate Alienware from liability that otherwise would be imposed under California law.

70.     Plaintiff denies that Alienware's Terms and Conditions are binding on him on grounds that he did not consent to the Terms and Conditions and/or the Terms and Conditions are not supported by adequate consideration and/or the Terms and Conditions are unconscionable.

71.     The Terms and Conditions contain an arbitration clause with a class action waiver that is contrary to policy of law under California Civil Code section 1668 and unconscionable under California Civil Code section 1670.5, and thus unenforceable.  The class action waiver is part of a scheme by Alienware, the party with superior bargaining power, to exempt itself from responsibility for its fraudulent or willfully injurious actions described herein.

## CLASS ACTION ALLEGATIONS

72.     Plaintiff brings this lawsuit as a class action on behalf of himself and all others similarly situated as members of a proposed plaintiff Class pursuant to Federal Rule of Civil Procedure 23.  This action satisfies the ascertainability, numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions

73.     The Class is defined as:

> All persons and entities residing in the State of California who purchased, not for resale, one or more Affected Computers.

74.     Excluded from the Class are (1) Alienware, any entity in which Alienware has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the judge to whom this case is assigned and any member of the judge's immediate family; (3) persons or entities who distribute or resell the computers, and (4) claims for personal injury, wrongful death and/or emotional distress.

## Numerosity & Ascertainability

75.     On information and belief, the Class is comprised of thousands of owners of Affected Computers throughout California, making joinder impractical.

76.     The Class is composed of an easily ascertainable, self-identifying set of individuals and entities who purchased Affected Computers.  Discovery will reveal which, if any, other Alienware Area-

743642.3

51 laptop computers share the same defective design as the Affected Computers, and the Class can be defined to include such models by name at that time.

## Community of Interest

77. There is a well-defined community of interest among the Class members, and the disposition of their claims in a single action will provide substantial benefits to all parties and to the Court.

## Typicality

78. The claims of the representative Plaintiff are typical of the claims of the Class, in that the representative Plaintiff, like all members of the Class, owns an Affected Computer that contains the inherent Defects. The factual bases of Alienware's misconduct are common to all Class members and represent a common thread of fraudulent misconduct resulting in injury to all members of the Class.

## Predominance of Common Issues

79. There are numerous questions of law and fact common to all Class members, and those questions predominate over any questions that may affect only individual Class members.

80. The predominant common questions include the following:

  a. Whether the Affected Computers contain common design defects;

  b. Whether the Affected Computers are substantially certain to prematurely fail;

  c. Whether the Affected Computers are not of merchantable quality;

  d. Whether the existence of the Defects in the Affected Computers is a material fact reasonable purchasers would have considered in deciding whether to purchase a computer;

  e. Whether Alienware knew and/or was reckless in not knowing of the Defects in the Affected Computers;

  f. Whether Alienware fraudulently concealed from and/or failed to disclose to Plaintiff and the Class the Defects in the Affected Computers;

  g. Whether Alienware had a duty to Plaintiff and the Class to disclose the Defects in the Affected Computers;

743642.3

h.      Whether Alienware's concealment of and/or failure to disclose the Defects induced Plaintiff and the Class to act to their detriment by purchasing defective Affected Computers;

i.      Whether Alienware represented, through its words and conduct, that the Affected Computers had characteristics, uses or benefits that they did not actually have, in violation of the Consumer Legal Remedies Act ("CLRA");

j.      Whether Alienware represented, through its words and conduct, that the Affected computers were of a particular standard, quality or grade when they were of another, in violation of the CLRA;

k.      Whether Alienware advertised the Affected Computers with the intent not to sell them as advertised, in violation of the CLRA;

l.      Whether Alienware's active concealment of and/or failure to disclose the true nature of the Affected Computers was likely to mislead or deceive, and therefore fraudulent, within the meaning of Bus. & Prof. Code § 17200, *et seq.*;

m.      Whether Alienware's active concealment of and/or failure to disclose the true nature of the Affected Computers is unfair within the meaning of Bus. & Prof. Code § 17200, *et seq.*;

n.      Whether Alienware's warranties, marketing, advertisements and other express representations that the Affected Computers had certain characteristics and/or were of a certain quality or standard violated Bus. & Prof. Code § 17500, *et seq.*;

o.      Whether Alienware should be declared financially responsible for notifying all Class members of the defective Affected Computers and for the costs and expenses of repair and replacement of all such defective components therein;

p.      Whether Plaintiff and the Class are entitled to compensatory damages, and the amount of such damages;

q.      Whether, as a result of Alienware's fraud, Plaintiff and the Class are entitled to civil penalties and/or punitive damages, and the amount of such damages;

743642.3

r.      Whether Alienware should be enjoined from engaging in the methods, acts or practices alleged herein; and

s.      Whether Alienware should be ordered to disgorge, for the benefit of the Class, all or part of its ill-gotten profits received from the sale of the defective Affected Computers and replacement components and/or make restitution to Plaintiff and members of the Class.

### Adequacy

81.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective products.

82.     Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so.  Neither Plaintiff nor his Counsel have interests adverse to those of the Class.

### Superiority

83.     Absent class treatment, Plaintiff and members of the Class will continue to suffer harm and damages as a result of Alienware's unlawful and wrongful conduct.

84.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  Without a class action, individual Class members would face burdensome litigation expenses, deterring them from bringing suit or adequately protecting their rights. Because of the relatively modest economic value of the individual Class members' claims, few could likely seek their rightful legal recourse.  Absent a class action, Class members would continue to incur harm without remedy, while Alienware would continue to reap the benefits of its misconduct.

85.     The consideration of common questions of fact and law will conserve judicial resources and promote a fair and consistent resolution of these claims.

### FIRST CAUSE OF ACTION
**Violation of the California Consumer Legal Remedies Act,
Civ. Code Section 1750, et seq. (the "CLRA")
(On Behalf of Consumers Only)**

-21-

743642.3

86.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

87.     Defendant Alienware is a "person" as defined by Civil Code § 1761(c).

88.     Plaintiff and many Class members are "consumers" within the meaning of Civil Code § 1761(d).

89.     The Affected Computers are "goods" within the meaning of Civil Code § 1761(a).

90.     Alienware violated the CLRA's proscription against concealment of the characteristics, use, benefit, or quality of goods by actively concealing at all times from Plaintiff, Class members, and everyone in the chain of distribution in all of its broadly disseminated warranties, marketing and advertising, the material fact that the Affected Computers are defective and substantially certain to overheat and fail prematurely.  Specifically, Alienware's active concealment of material facts violated (a) § 1770(a)(5)'s proscription against representing that goods have uses or characteristics they do not actually have; (b) § 1770(a)(7)'s proscription against representing that goods are of a particular standard or quality when they are of another; and (c) § 1770(a)(9)'s proscription against advertising goods with the intent not to sell them as advertised.

91.     Under California law, a duty to disclose arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.

92.     Alienware had a duty to disclose material facts regarding the Defects alleged here pursuant to the second, third, and fourth prongs:

(a)     Alienware had and has a duty to disclose material facts about the Defects because Alienware had exclusive knowledge of the Defects at the time of sale.  The Defects, while obvious to an expert engineer, are latent and not something that Plaintiff or Class members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.

743642.3

(b)     Alienware had and has a duty to disclose material facts about the Defects because Alienware undertook active steps to conceal them.  Plaintiff is aware of nothing in Alienware's advertising, publicity, or marketing materials that discloses the truth about the Defects, despite ample evidence that Alienware was aware of the problem by virtue of, if nothing else, numerous consumer complaints.  Alienware has at all times denied the existence of any defect in the Affected Computers.

(c)     Alienware had and has a duty to disclose material facts about the Defects because Alienware made and makes partial representations about the Affected Computers and also suppresses material facts about them.  Alienware's partial representations have appeared in its print advertising, press releases, and website.  These partial representations give rise to a duty to disclose the full story— that the Affected Computers are unreasonably likely to overheat and fail prematurely under normal use conditions due to the Defects alleged and described herein.

93.     Had Plaintiff known the concealed material facts, he would have purchased a different computer or paid less for the Affected Computer he purchased.

94.     Alienware's concealment of material facts was designed to induce Plaintiff and the members of the Class to purchase the Affected Computers.

95.     Plaintiff and the Class suffered actual damages as a direct and proximate result of Alienware's actions, concealment and/or omissions in violation of the CLRA, as evidenced by their decisions to purchase Affected Computers that were defective.  Had they known the true character and quality of the Affected Computers, Plaintiff and Class members would not have purchased (or would have paid less for) them.

96.     To this day, Alienware continues to violate the CLRA by concealing the defective nature of the Affected Computers and continuing to sell replacement parts for the Affected Computers, continuing to service (and profit unjustly from) the Affected Computers in relation to failures due to the Defects, and by failing or refusing to reveal to Class members that the cause of the problems with the Affected Computers is an inherent defect and not a result of improper use or maintenance.

97.     Alienware further violated the CLRA by including an unconscionable provision in its Terms and Conditions agreement.  Specifically, the arbitration clause contained in the Terms and

743642.3

Conditions agreement violates Section 1770(a)(19)'s proscription against inserting an unconscionable provision in a consumer contract.

98.    Plaintiff, on behalf of himself and for all those similarly situated, demands judgment against Alienware under the CLRA for injunctive relief in the form of restitution and/or proportional disgorgement of funds paid to Alienware to purchase Affected Computers or repair and/or replace parts of the Affected Computers, an injunction requiring Alienware to adequately repair the Defects or replace the Affected Computers free of charge, and an award of attorneys' fees pursuant to Civil Code § 1780(d).  Plaintiff seeks this injunctive relief for Alienware's violations of CLRA §§ 1770(a)(5), (7), (9) and (19).

99.    In accordance with section 1782(a) of the CLRA, Civ. Code § 1782(a), on October 4, 2006, Plaintiff's counsel, on behalf of Plaintiff Oestreicher, served Alienware, by certified mail, return receipt requested, with notice of its alleged violations of CLRA §§ 1770(a)(5), (7) and (9) relating to the Affected Computer owned by Oestreicher.  A true and correct copy of this notice is attached hereto as Exhibit 10.

100.    Alienware responded to Plaintiff's CLRA notice in an email from Alienware's "critical issues team" dated October 11, 2006.  A true and correct copy of this email is attached hereto as Exhibit 11.  Alienware's response states that it will arrange for repair in their Miami facilities but that any parts that are replaced will need to be paid for at Plaintiff's expense.  This response does not address the Defect in the Plaintiff's or Class Members' Affected Computers.  Alienware continues its refusal to offer consumers any remedies at all to address Defects in the Affected Computers.

101.    Alienware thus failed to provide appropriate relief for its violations of the CLRA within 30 days of receipt of Plaintiff's notice letter, received by Alienware on October 4, 2006.  Therefore, in accordance with CLRA section 1782(b), Plaintiff is entitled, under CLRA section 1780, to recover or obtain any of the following relief for Alienware's violation of CLRA sections 1770(a)(5), (7), and/or (9):

- actual damages under Civ. Code § 1780(a)(1);
- punitive damages under Civ. Code § 1780(a)(4);

743642.3

- attorneys' fees and costs under Civ. Code § 1780(d); and

- any other relief the Court deems proper under Civ. Code § 1780(a)(5).

## SECOND CAUSE OF ACTION
### Violation of California Bus. & Prof. Code Sections 17200 & 17500
### (the "Unfair Business Practices Act")

102.    Plaintiffs incorporate by reference the allegations contained in preceding paragraphs of this Complaint.

103.    Business & Professions Code § 17200 prohibits acts of "unfair competition."  As used in this section, "unfair competition" encompasses three distinct types of misconduct: (a) "unlawful…business acts or practices;" (b) "unfair or fraudulent business acts or practices;" and (c) "unfair, deceptive or misleading advertising."

104.    Alienware violated the Unfair Business Practices Act, Business and Professions Code §§ 17200 and 17500, *et seq.,* by engaging in conduct that violated each of the three prongs identified by the statute and outlined in Paragraph 103, above.

105.    Alienware committed an *unlawful* business act or practice in violation of the Unfair Business Practices Act, Business and Professions code § 17200, *et seq.,* when it violated the CLRA as alleged in Paragraphs 86-101, above.

106.    Alienware committed an *unlawful* business act or practice in violation of the Unfair Business Practices Act, Business and Professions code § 17200, *et seq.,* when it violated the common law prohibition against fraudulent concealment/nondisclosure as alleged in Paragraphs 116-129, below.

107.    Alienware committed *unfair and fraudulent* business acts and practices in violation of the Unfair Business Practices Act, Business and Professions Code §§ 17200 and 17500, *et seq.,* when it concealed and/or failed to disclose the true defective nature of the Affected Computers in its marketing, advertising and other broadly disseminated representations in a manner likely to deceive the public.

108.    Alienware committed *unfair and fraudulent* business acts and practices in violation of the Unfair Business Practices Act, Business and Professions Code §§ 17200 and 17500, *et seq.,* when it

743642.3

refused to repair the Defects and/or failures arising from the Defects free of charge and when it refused to sell repair or replacement parts to consumers.

109.    Alienware disseminated *unfair, deceptive, untrue and/or misleading advertising* in violation of the Unfair Business Practices Act, Business & Professions Code §§ 17200 and 17500, *et seq.,* when it concealed and/or failed to disclose the true defective nature of the Affected Computers in its marketing, advertising and other broadly disseminated representations in a manner likely to deceive the public.  Alienware's misleading advertising statements are set forth at Paragraph 64, above.

110.    Alienware's deceptive practices were specifically designed to induce Plaintiff and members of the Class to purchase Affected Computers.

111.    Alienware's deceptive practices have deceived and/or are likely to deceive Plaintiff and members of the consuming public.

112.    To this day, Alienware continues to violate the Unfair Business Practices Act by continuing to actively conceal the defective nature of the Affected Computers and by charging consumers for repairs necessitated by the Defects.

113.    As a direct and proximate cause of Alienware's violation of the Unfair Business Practices Act, Plaintiff and the Class have suffered harm in that they own Affected Computers that have prematurely failed, will prematurely fail, or are substantially certain to prematurely fail and have required or will require Plaintiff and the Class to incur costs to repair and replace defective components or defective Affected Computers as a whole.

114.    As a direct and proximate result of Alienware's violation of the Business and Professions Code § 17200, *et seq.,* Alienware has been unjustly enriched and should be required to make restitution to Plaintiff and the Class or disgorge its ill-gotten profits pursuant to Business & Professions Code § 17203.

115.    Plaintiff, on behalf of himself and for all others similarly situated, demands judgment against Alienware for injunctive relief in the form of restitution, and/or disgorgement of funds paid to Alienware to purchase the Affected Computers or to repair and replace defective components, or

743642.3

1   injunctive relief in the form of repairing and replacing defective components on Plaintiff's and Class

2   members' Affected Computers, as well as attorneys' fees, costs and interest.

3

4   **THIRD CLAIM FOR RELIEF**
**Fraudulent Concealment/Nondisclosure**

5        116.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs

6   of this Complaint.

7        117.    Alienware knew, or was reckless in not knowing, that the Affected Computers are

8   defective in that they are substantially certain to fail well in advance of their expected useful life.

9        118.    Alienware fraudulently concealed from and/or intentionally failed to disclose to Plaintiff,

10  the Class, and all others in the chain of distribution (*e.g.,* concealments and omissions in Alienware's

11  communications with wholesalers, retailers, and others in the chain of distribution that were ultimately

12  passed on to Plaintiff and the Class) the true nature of the Affected Computers, which is that the heat

13  removal systems they contain are inadequate and will allow the Affected Computers to overheat and

14  prematurely fail.

15

16       119.    Under California law, a duty to disclose arises in four circumstances: (1) when the

17  defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive

18  knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a

19  material fact from the plaintiff; and (4) when the defendant makes partial representations but also

20  suppresses some material facts.

21       120.    Alienware had a duty to disclose material facts regarding the Defects alleged here

22  pursuant to the second, third, and fourth prongs:

23            (a)    Alienware had and has a duty to disclose material facts about the Defects because

24  Alienware had exclusive knowledge of the Defects at the time of sale.  The Defects, while obvious to an

25  expert engineer, are latent and not something that Plaintiff or Class members could, in the exercise of

26  reasonable diligence, have discovered independently prior to purchase.

27            (b)    Alienware had and has a duty to disclose material facts about the Defects because

28  Alienware undertook active steps to conceal them.  Plaintiff is aware of nothing in Alienware's

-27-
SECOND AMENDED COMPLAINT

743642.3

advertising, publicity, or marketing materials that discloses the truth about the Defects, despite ample evidence that Alienware was aware of the problem by virtue of, if nothing else, numerous consumer complaints.

(c)     Alienware had and has a duty to disclose material facts about the Defects because Alienware made and makes partial representations about the Affected Computers but also suppresses some material facts.  These partial representations give rise to a duty to disclose the full story—that the Affected Computers are unreasonably likely to overheat and fail prematurely under normal use conditions due to the Defects alleged and described herein.

121.     The facts concealed and/or not disclosed by Alienware to Plaintiff and the Class are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or to pay the same price for) a computer.

122.     Alienware intentionally concealed and/or failed to disclose the problems with the Affected Computers for the purpose of inducing Plaintiff and the Class to act thereon.

123.     Plaintiff and the Class justifiably acted or relied upon to their detriment the concealed and/or non-disclosed facts as evidenced by their purchase of the Affected Computers and/or replacement parts for them.

124.     Had Plaintiff and the Class known of the Defects, they would not have purchased (or would have paid less for) their Affected Computers.

125.     As a direct and proximate cause of Alienware's misconduct, Plaintiff and Class members have suffered actual damages in that they bought and own Affected Computers that contain inherent defects and that have prematurely failed or are substantially certain to prematurely fail, and will be required to incur costs to repair and/or replace the defective components or the computers as a whole.

126.     Alienware's conduct has been and is wanton and/or reckless and/or shows a reckless indifference to the interests of others.

127.     Alienware has acted with "malice" as that term is defined in Civ. Code § 3294(c)(1) by engaging in conduct that was and is intended by Alienware to cause injury to the Plaintiff and the Class.

128.    Alienware has committed "fraud" as that term is defined in Civ. Code § 3294(c)(3) through its concealment of material facts known to Alienware with the intent to cause injury to the Plaintiff and the Class.

129.    Plaintiff, on behalf of himself and all others similarly situated, demands judgment against Alienware for actual and punitive damages in accordance with Civ. Code § 3294(a) for himself and each member of the Class, plus attorneys' fees for the establishment of a common fund, interest, and costs.

<div align="center">

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**

</div>

130.    The preceding paragraphs of this Complaint are realleged and incorporated by reference and asserted by Plaintiff on behalf of himself and members of the class.

131.    By its wrongful acts and omissions described herein, including selling the Affected Computers, charging for repairs, and refusing to sell parts so that Plaintiff and Class Members can obtain repairs elsewhere, Alienware has been unjustly enriched at the expense of Plaintiff and the Class.

132.    Separate and apart from whether or not such conduct constitutes common law fraud or a statutory violation, it would be inequitable for Alienware to retain the profits, benefits, and other compensation obtained by it from its wrongful conduct in manufacturing, marketing and selling the Affected Computers.

133.    Plaintiff, on behalf of himself and all others similarly situated, demands restitution from Alienware, and an Order of this Court disgorging all profits, benefits, and other compensation obtained by Alienware from its wrongful conduct and awarding attorneys' fees, costs and interests.

<div align="center">

**PRAYER FOR RELIEF**

</div>

WHEREFORE, the Plaintiff and Class members request that the Court enter an Order or judgment against Defendant including the following:

134.    An Order certifying this action as a Class Action (and certifying any appropriate subclasses), appointing Plaintiff as Class Representative and his counsel of record jointly as Class Counsel;

135.    Damages in the amount of monies paid for Affected Computers;

743642.3

1   136.   Actual damages, statutory damages, punitive or treble damages, and such other relief as

2   provided by the statutes cited herein;

3   137.   Prejudgment and post-judgment interest on such monetary relief;

4   138.   Equitable relief in the form of restitution and/or restitutionary disgorgement of sums

5   received by Alienware as a result of the unfair, unlawful and/or deceptive conduct alleged in herein;

6   139.   Injunctive relief;

7   140.   The costs of bringing this suit, including reasonable attorneys' fees; and

8   141.   All other relief to which Plaintiff and members of the Class may be entitled at law or in

9   equity and which the Court deems proper.

10

11   DATED:  January 7, 2008                         Respectfully submitted,

12                                                   LIEFF CABRASER HEIMANN & BERNSTEIN,
                                                     LLP
13

14                                                   By:    /s/ Kristen E. Law
                                                          Jonathan D. Selbin (SBN 170222)
15                                                        Kristen E. Law (SBN 222249)
                                                          LIEFF, CABRASER, HEIMANN &
16                                                        BERNSTEIN LLP
                                                          275 Battery Street, 30th Floor
17                                                        San Francisco, California 94111-3336
                                                          Tel: (415) 956-1000; Fax: (415) 956-1008
18

19                        **ADDITIONAL COUNSEL FOR PLAINTIFF**

20   Michael L. Kelly (SBN 82063)
     Robert K. Friedl (SBN 134947)
21   KIRTLAND & PACKARD LLP
     2361 Rosecrans Avenue, Fourth Floor
22   El Segundo, California  90245
     Tel.: (310) 536-1000; Fax: (310) 536-1001
23

24   David P. Meyer (Ohio Bar No. 0065205) admitted *pro hac vice*
     Patrick G Warner (Ohio Bar No. 0064604) admitted *pro hac vice*
25   Matthew R. Wilson (Ohio Bar No. 0072925) admitted *pro hac vice*
     DAVID P. MEYER & ASSOCIATES CO., LPA
26   1320 Dublin Road, Suite 100
     Columbus, Ohio 43215
27   Tel: (614) 224-6000; Fax: (614) 224-6066

28   Jeffrey B. Kaplan (Florida Bar No. 039977) *pro hac vice* admission pending
     DIMOND KAPLAN & ROTHSTEIN, P.A.

200 S. E. 1st Street, Suite 708
Miami, Florida 33131
Tel: (305) 374-1920; Fax: (305) 374-1961

SECOND AMENDED COMPLAINT

743642.3

# EXHIBIT  1



FROM THE CREATORS OF DIABLO...

# PC GAMER

LOCKED

W R

MAY 2005
VOLUME 12
NUMBER 5

**EXCLUSIVE FIRST LOOK!**
**>> The new RPG from the makers of *Diablo*...**

# HELLGATE
## LONDON

**REVIEWED:**
>> Brothers in Arms
>> Splinter Cell: Chaos Theory
>> Freedom Force vs. The Third Reich

*AND MORE!*

$4.99US  $6.99CAN

5>

PERIODICALS
NEW YORK PUB LIB
GRAND CENTRAL STA
BOX 2240- PERDCLS DIV   VP
NEW YORK      NY 10163-2240

SOLO EDITION

Alienware recommends Microsoft® Windows® XP.



# Dominate!

## It's what we do.

Select Area-51® 3500 high-performance systems feature
Intel® Pentium® 4 Processors with HT Technology.



Area-51

Area-51™

Systems starting at:
$1,299





THE ORIGINAL ULTIMATE GAMING MACHINE

Download the exclusive Alienware wallpaper at
**www.alienware.com/dominate**

**1.8oo.alienware**
(1.800.254.3692)

# 35 TOP GAMES PREVIEWED!

QUAKE IV ■ CITY OF VILLAINS ■ AGE OF EMPIRES III ■ GTA: SAN ANDREAS ■ AND MANY MORE!

# PC GAMER

**DUKE NUKEM FOREVER**
WE'VE SEEN IT! READ OUR REPORT!

BEST-SELLING PC GAMES MAGAZINE

[WORLD EXCLUSIVE]

# PREY

>>> The legendary creators of **DUKE NUKEM** unveil their Doom 3–powered shooter!

λ **HALF-LIFE 2: LOST COAST** EXCLUSIVE LOOK!

ACTUAL SCREENSHOT

JUNE 2005
VOLUME 12
NUMBER 6

**FIRST LOOK!**

## RELIC'S AMAZING NEW RTS
>>> Courage and carnage in the new World War II–themed COMPANY OF HEROES!

**EXCLUSIVE!**

## MATRIX ONLINE IN-GAME ITEM
>>> Use the unique code inside this issue to unlock a FREE MxO accessory!

future games
The First Choice For Gamers

$4.99US $6.99CAN

06>

0 09281 02615 0

SOLD EDITION



Alienware recommends Microsoft® Windows® XP.



# Dominate!

## It's what we do.

Select Area-51® 3500 high-performance systems feature
Intel® Pentium® 4 Processors with HT Technology.



Area-51

Area-51™

Systems starting at:
**$1,299**









Alienware recommends
Microsoft® Windows® XP Professional.

## WIN AN ALIENWARE AREA-51 5550
## ULTIMATE GAMING MACHINE

Custom-built and optimized for high-performance PC gaming, Alienware systems deliver unrivaled performance with the highest-detail possible and ultra-smooth gameplay. Incorporating state-of-the-art components, innovative engineering and design, and providing unprecedented customer service, Alienware systems offer the ultimate gaming experience. Immerse yourself in a new level of realism, whether you are defeating evil enemies, building your own empire, or conquering new worlds online. PC games **Play Best On Alienware.**

Enter code: EEAD to win an Alienware Area-51 at:
**WWW.ALIENWARE.COM/EEAD**
or contact us direct at: 1-800-ALIENWARE



PLAYS BEST ON
**ALIENWARE**

NO PURCHASE NECESSARY TO ENTER OR WIN.



## HALF-LIFE 2: THE NEXT EPISODES
### VALVE TELLS US ITS PLANS FOR AFTERMATH — AND BEYOND!

# PC GAMER
### LOCKED

THE WORLD'S BE

**18 GAMES REVIEWED!**

**INSIDE**

## DOOM 3 EXPANSION
REVIEWED

## BATTLEFIELD 2
STRESS TEST

## DUNGEON SIEGE II
HANDS-ON

# SID MEIER'S CIVILIZATION IV
THE GAME GOD UNVEILS HIS ULTIMATE CREATION...
/// LETTING YOU SHAPE RELIGION, GOVERNMENT, AND GREAT FIGURES THROUGHOUT HISTORY!

**JULY 2005**
**VOLUME 12**
**NUMBER 7**

#BXNDVVJ *******3-DIGIT 101
#PCG0007873920/4#87   FEB07
PERIODICALS
NEW YORK PUB LIB
GRAND CENTRAL STA
BOX 2240- PERDCLS DIV   WH
NEW YORK      NY 10163-2240

$4.99US $6.99CAN

**PLUS:**
THE SURPRISE OF 2005...
*LEGO STAR WARS!?!*



future
MEDIA WITH PASSION

07>
0 9281 02615

SOLO EDITION





THE ORIGINAL ULTIMATE GAMING MACHINE

Download the exclusive Alienware wallpaper at
**www.alienware.com/dominate**

**1.800.alienware**
(1.800.254.3692)



Alienware recommends Microsoft® Windows® XP.

# Dominate!

## It's what we do.

Select Area-51® 3500 high-performance systems feature
Intel® Pentium® 4 Processors with HT Technology.



Area-51

Area-51™

Systems starting at:
$1,299

# TOTAL ANNIHILATION REBORN!

GUILD WARS REVIEWED!

# PC GAMER

THE WORLD'S BE... ...AZINE

THE CREATOR OF

## TOTAL ANNIHILATION

RETURNS TO RE-INVENT THE GENRE ONCE AGAIN...

# SUPREME COMMANDER

/// WORLD-EXCLUSIVE FIRST LOOK AT CHRIS TAYLOR'S NEW RTS!

#BXNDVVJ *******3-DIGIT 101
#PCG000787392#/4#88   FEB07

PERIODICALS
NEW YORK PUB LIB
GRAND CENTRAL STA
BOX 2240- PERODCLS DIV   WB
NEW YORK      NY 10163-2240

SOLO



future
MEDIA WITH PASSION

0  09281 02615

## THE TOP 10 GAMES OF E3

UNREAL TOURNAMENT 2007 · ALAN WAKE
SPORE · ELDER SCROLLS IV: OBLIVION

*AND MORE!*

# Contents





**THE WORLD'S BEST-SELLING PC GAMES MAGAZINE**

## 22



## SUPREME COMMANDER

PC GAMER

**FEATURE**



## 22

From Game God Chris Taylor comes the spiritual sequel to his RTS masterpiece *Total Annihilation*. In *Supreme Commander*, the genre moves up to a god's-eye view of an entire theater of war. Need more? Just imagine all the giant robots with cool freakin' laser beams!

**FEATURE**



## 36

We've got the scoop on some of the hottest new games to come out of E3 2005. Get full details on *Alan Wake*, *Unreal Tournament 2007*, *Rise & Fall*, *Star Wars: Empire at War*, Will Wright's *Spore*, *Rise of Legends*, *D&D Online*, and more. This story is bursting with goodness!

**SCOOPS**



## 12

The follow-up to *Brothers in Arms*, *Earned in Blood*, promises more explosive World War II action, along with better enemy AI and co-op multiplay. The complete story, right here. And as an added bonus, the Allies decisively win this time, thus ending the WWII genre. Nah, just playin'.

**STRATEGY**



## 92

Oh, don't fight it: "cheating" is just another word for "winning." Get a helping hand with rock-'em sock-'em cheats for *Act of War*, *LEGO Star Wars*, *Psychonauts*, *Doom 3: Resurrection of Evil*, *Empire Earth II*, and *SWAT 4*. God-mode goodness starts here!



# WIN AN ALIENWARE AREA 51 5500

  

Alienware recommends
Microsoft® Windows® XP Professional.



PLAYS BEST ON
ALIENWARE



**Select Area-51 5500 systems feature Intel® Pentium® Processor Extreme Edition**

Custom-built and optimized for high-performance PC gaming. Alienware systems deliver unrivaled performance with the highest-detail possible and ultra-smooth gameplay. Incorporating state-of-the-art components, innovative engineering and design, and providing unprecedented customer service, Alienware systems offer the ultimate gaming experience. Immerse yourself in a new level of realism, whether you are defeating evil enemies, building your own empire, or conquering new worlds online. PC games **Play Best On Alienware**.

pentium
E X T R E M E
E D I T I O N

Enter code: BF2AD to win an Alienware Area-51 at:

# WWW.ALIENWARE.COM/BF2AD | 1-800-ALIENWARE

NO PURCHASE NECESSARY TO ENTER OR WIN



**EXCLUSIVE WARHAMMER FIGURINE!**
"CHAOS SORCERER" COMPLETE DETAILS INSIDE

# PC GAMER

THE WORLD'S BEST PC GAMES MAGAZINE

**INSIDE:**

## F.E.A.R.
FIRST PLAY-TEST OF
THE PC'S TOP SHOOTER

## BATTLEFIELD 2
## STRATEGY GUIDE
DEVELOPER'S TIPS FOR
YOUR FAVORITE MAPS

**2006**
# RTS REVOLUTION
WE REVEAL THE **ALL-NEW WARHAMMER RTS**
PLUS **20** MORE REAL-TIME STUNNERS!

SEPTEMBER 2005 | **140**
VOLUME 12, NUMBER 9

#BXNDVVJ *******3-DIGIT 101
#PCG000787392#/4#89   FEB07

PERIODICALS
NEW YORK PUB LIB
GRAND CENTRAL STA
BOX 2240- PERDCLS DIV   TU
NEW YORK    NY 10163-2240

...TORY?
...ES SWEEP
...GAME
...AWARDS


future
MEDIA WITH PASSION

$4.99US $6.99CAN


0 09281 02615 0
09>

SOLO EDITION

# Looks *can* kill

Especially with this kind of power



**AREA-51m™ 7700 MOBILE SYSTEM**

› **OPERATING SYSTEM:**
Microsoft Windows XP PRO Edition with Service Pack 2 ‹

› **PROCESSOR:**
Intel Pentium 4 530J Desktop Processor w/ HT Technology 3.0GHz 800MHz FSB 1MB Cache ‹

› **MEMORY:**
512MB Dual Channel DDR2 SO-DIMM at 533MHz 2 x 256MB ‹

› **GRAPHICS CARD:**
**NVIDIA GeForce™ Go 6800 Ultra with 256MB of DDR3 memory ‹**

› **HARD DRIVE:**
**120GB (60GB x 2) 5400 RPM ATA100 RAID 0 ‹**

› **OPTICAL DRIVE:**
8X Dual Layer DVD+/-RW / 24X CD-RW Combo w/Software ‹

› **LCD:**
**17" Wide Screen XGA+ featuring Clearview Technology ‹**

**$2,799** [after $400 rebate]




Rebate available online only at:

**www.alienware.com/pcgamer**

[254-3692]

**1-800-ALIENWARE**

Alienware recommends Microsoft® Windows® XP Professional



## AREA-51™ 5500 DESKTOP SYSTEM

**› OPERATING SYSTEM:**
Microsoft® Windows® XP Professional Edition with Service Pack 2 ‹

**› PROCESSOR:**
Intel® Pentium® 4 550J Desktop Processor w/ HT Technology 3.4GHz 800MHz FSB 1MB Cache ‹

**› MEMORY:**
1GB Dual Channel DDR2 SDRAM at 533MHz - 2 x 512MB ‹

**› GRAPHICS CARD:**
NVIDIA® GeForce™ 7800 GTX PCI Express 256MB DDR3 w/Dual Digital and TV Out ‹

**› HARD DRIVE:**
160GB (80GB x 2) Serial ATA 7,200 RPM w/16MB Cache RAID 0 ‹

**› OPTICAL DRIVE:**
16x Dual Layer DVD+R/W ‹

# $1,999* [after $400 rebate]

Add the Alienware® 20.1" LCD Display for $749



Alienware recommends Microsoft® Windows® XP Professional



## AREA-51™ 5500 DESKTOP SYSTEM

> **OPERATING SYSTEM:**
Microsoft Windows XP Professional Edition with Service Pack 2 ‹

> **PROCESSOR:**
Intel Pentium 4 550J Desktop Processor w/ HT Technology 3.4GHz 800MHz FSB 1MB Cache ‹

> **MEMORY:**
1GB Dual Channel DDR2 SDRAM at 533MHz - 2 x 512MB ‹

> **GRAPHICS CARD:**
NVIDIA® GeForce™ 7800 GTX PCI Express 256MB DDR3 w/Dual Digital and TV Out ‹

> **HARD DRIVE:**
160GB (80GB x 2) Serial ATA 7,200 RPM w/16MB Cache RAID 0 ‹

> **OPTICAL DRIVE:**
16x Dual Layer DVD+R/W ‹

# $1,999* [after $400 rebate]

Add the Alienware® 20.1" LCD Display for $749



# EXHIBIT  2

Products   Player's Lounge   Alienware Difference   Deals & Offers   Purchasing Info   Corporate   Support   [Keyword Search]   [Search ▶]

ALIENWARE UNVEILS THE AREA-51M 7700 MOBILE DESKTOP

**Alienware's First PCI Express-Powered Mobile Desktop Offers Desktop Power in a Portable System**

**MIAMI, FL – November 8, 2004** - Alienware®, the leading manufacturer of high-performance desktop, notebook, media center, and professional systems, announced the availability of the new Alienware Area-51m™ 7700 mobile desktop that delivers the power of a high-performance desktop in a conveniently portable platform. The Area-51m 7700 is powered by the Intel® Pentium® 4 desktop processor with 1MB of cache and is Alienware's first mobile system to provide the cutting-edge performance gains of PCI Express™ technology.

With a remarkable combination of power and flexibility, the Alienware Area-51m 7700 mobile desktop delivers the ideal solution for users seeking a portable alternative to their desktop, an easy-to-move gaming system, or a high-performance system that fits both limited spaces and hectic lifestyles. Powered by Intel's Pentium 4 desktop processor, the Area-51m 7700 provides expansion of up to 4 GB of DDR 2 memory, dual hard drive support with RAID, and dual optical drives to serve as the ultimate desktop replacement.

Power-hungry gamers and enthusiasts alike will benefit from the Area-51m 7700's removable video card modules featuring the new NVIDIA® GeForce™ Go 6800, today's fastest mobile graphics card. With no additional set-up of speakers, keyboards, or monitor necessary, the Area-51m 7700 is the perfect companion for any LAN party. The Area-51m 7700 also offers a crystal-clear 17" widescreen SXGA + LCD display with built-in video conferencing.

"Alienware is excited to offer a mobile system with the perfect blend of desktop power and portability," said Robert Lusk, vice president of sales and marketing for Alienware. "Alienware's steadfast commitment to providing high-performance systems that meet the ever-evolving needs of our customers continues with the introduction of the Area-51m 7700."

"Powered by NVIDIA's highly advanced GeForce Go 6800, the Area-51m 7700 mobile desktop delivers dramatic visual enhancements to leading-edge games and multimedia applications," said Rob Csongor, General Manager, NVIDIA mobile GPU business. "Area-51m 7700 users will now enjoy the breakthrough graphics performance of the industry's most powerful desktops in a highly mobile setting."

**About Alienware**
Alienware manufactures high-performance desktop, notebook, and media center systems and leading-edge professional systems. Alienware offers unique and award-winning products that incorporate state-of-the-art components, innovative engineering and design, and unprecedented customer service. Alienware systems are available direct within the United States and Europe. For more information, please visit www.alienware.com or call 1-800-ALIENWARE (254-3692).

### # #

**Press Contact:**
Derek Asato
The Bohle Company
Derek@bohle.com
(310) 785-0515

**Alienware Contact:**
Jaclyn Gonzalez
Public Relations Specialist
jaclyn_gonzalez@alienware.com
(305) 251-9797

Return to Press Releases

**EXHIBIT  3**

Alienware: Innovative High-Performance Custom PCs for Gaming!  Page 1 of 2

Case3:07-cv-00512-MHP   Document114   Filed01/07/08   Page53 of 78



View Cart | Order Sta



There Are No Limits

ALX performance enhanced systems
with liquid cooling have arrived!

5.26.2004  Desktop Systems: ATI RADEON™ X800 XT Platinum Ed. - Now Available

**Alienware PCI Expr**
extraordi, ary advance
Dual Channel DDR2 SI
Definition, audio, and l
Storage Technologies th
biggest advancement
over a decade

**Alienwar**
dn a sta
sum the .

Announce
**Hyperspa**
combine t
and Valu

⊠ **Recent Review**

PC World
2004 W.

"You want fast? The A
based Aurora is force
competition down in fla

take pride in a company built by gamers, we have the expertise to help you configure an
awesome Gaming PC that will elevate your gaming experience.

Sometimes, the game reviews are great and the screen shots look awesome, but when you rush
home from the store and fire it up, you're a bit disappointed. You try to tweak the game settings,
but have to make some disappointing compromises to get the game to run correctly. Chunky and
slow scr een res and lifeless, it's a choice you shouldn't have to make. And you won't anymore,
now that you have found Alienware!

Our Gaming PCs feature cutting-edge technology and are optimized for performance and
designed to deliver ultra-smooth gameplay at maximum resolutions. Finally, you can take
advantage of the latest game technology; the colors, pixel shaders, shadow detail, and filters
which bring game worlds to life!

Click below to learn more about one of
these recent product launches:

› Next-Generation PCI-Express

Click below to learn more about these
popular products:

› Area-51m

Alienware: Innovative High-Performance Custom PCs for Gaming!    Page 2 of 2

Case3:07-cv-00512-MHP   Document114   Filed01/07/08   Page54 of 78



> Dual-Channel DDR2 Memory
> Intel® High-Definition Audio

> Area-51
> Aurora

fastest ever PC World
450 *

**Read More Reviews**

**How Does Alienware Compare?**
With almost twice the number of customer reviewers as Dell, Alienware scores almost 3 times higher in customer satisfaction on ResellerRatings.com.

Epic Gan

"Alienware is the only
consistently create ;
and flexibility we need
play. Unique names i
to be experienced."

Matt Norton
Producer, Epic Gr

**Read More Testimon**

View More Comparisons

Grade "A"
Support

Alienware receives an
from Smart Computing
outstanding customer

Reseller
Gold Cu
Satisfact

To place an order by phone please call **1-800-ALIENWARE**
Contact Us | FAQ | Privacy | Disclaimer | Terms & Conditions

**Need Assistance?**
> Chat with a Sales Representative
Hours: Mon-Fri 10:00AM - 7:00PM EST

Alier

# EXHIBIT  4







# EXHIBIT  5







# EXHIBIT  6





# EXHIBIT  7

Click here to view the demo movie!

**Intel® Pentium® Processor**
Each and every Area-51m system comes complete with an Intel® Pentium® Desktop Processor. Never before has a full fledged desktop processor been available in a mobile unit!

**Unsurpassed Video Performance**
What good is mobile gaming with a sub par video chipset? You won't find that here! Each Area-51m system comes equipped with the absolute most advanced graphics chipset available!

**Advanced Cooling Technology**
The Area-51m is a powerful machine which requires powerful cooling. All Area-51m systems come with a custom made heat sink specifically designed for high speed processors. Sticking with Alienware® tradition, each unit is packed full of fans and exhaust units to ensure optimum performance.

Click here to learn more.

## Can a gaming system be used for other tasks?

Yes. A computer system built for gaming must contain the and highest performing components to keep up with the demands of modern games.

·   Click here to learn more.

## Finance Your Purchase!

Alienware® is now offering customers the option to finance their purch the new Alienware Credit Card. You may request an application by mail or phone and receive instant approval if qualified.

Click here to learn more.

"The Alienware Area-51m is a notebook PC for people take their games seriously."

Click here to read the review!

"I've seen the future of notebooks, and Alienware is i the way."

Click here to read the review!

"Put the Area-51m notebook at the top of your list."

Click here to read the review!

To place an order by phone please call **1-800-ALIENWARE**
**Contact Alienware | FAQ | Privacy | Website Disclaimer**

Alienw



MAIN PAGE    REVIEWS • PRESS    PROMOTIONS    INFORMATION    SUPPORT AREA    SHOP

"The truth

- S

The Alienware® Area-51m system is the first mobile gaming machine with the highest level user in mind. This conveniently compact unit eliminates the task of transporting your entire desktop system including case, keyboard, speakers, etc. From LAN parties to business meetings to classroom lectures it can go virtually anywhere. The Area-51m is the Ultimate Mobile Gaming Machine!

This package is available as is for the price listed above, or you also have the option of customizing it to meet your existing needs/wants. See for yourself what we're talking about!

Microsoft® Windows® XP Professional
High-Performance Chassis
Pentium® 4 @ 3.06GHz
1024MB DDR SDRAM
ATI Mobility RADEON 9000
15.0" inch UXGA LCD Screen
60GB 7200 RPM with 8MB Cache

**Price: $3,092.00**
Before all applicable rebates.

Customize

Microsoft® Windows® XP Home Edition
High-Performance Chassis
Pentium® 4 @ 2.8GHz
512MB DDR SDRAM
ATI Mobility RADEON 9000
15.0" inch UXGA LCD Screen
60GB 7200 RPM with 8MB Cache

**Price: $2,628.00**
Before all applicable rebates.

Customize

Microsoft® Windows® XP H
High-Performance Chassis
Pentium® 4 @ 2.66GHz
512MB DDR SDRAM
ATI Mobility RADEON 9000
15.0" inch UXGA LCD Scree
40GB 5400 RPM ATA100

**Price: $2,243.**
Before all applicable rebates.

Customize

The Alienware Difference

View All colors

## How can I get the best insurance for m system?

To obtain the highest level of service and support select t extended warranty. This package ensures that you will re most secure protection on your investment.

**EXHIBIT  8**



Alienware recommends
Microsoft® Windows® XP Professional.

## WIN AN ALIENWARE AREA-51 5550 ULTIMATE GAMING MACHINE

Custom-built and optimized for high-performance PC gaming, Alienware systems deliver unrivaled performance with the highest detail possible and ultra smooth gameplay. Incorporating state-of-the-art components, innovative engineering and design, and providing unprecedented customer service, Alienware systems offer the ultimate gaming experience. Immerse yourself in a new level of realism, whether you are defeating evil enemies, building your own empire, or conquering new worlds online. PC games **Play Best On Alienware.**

Enter code: EEAD to win an Alienware Area-51 at:
**WWW.ALIENWARE.COM/EEAD**
or contact us direct at: 1-800-ALIENWARE



# EXHIBIT  9

Order Online or Call 1-800-ALIENWARE

View Cart    Order Status    Careers    Site Map

Products    Player s Lounge    Alienware Difference    Deals & Offers    Purchasing Info    Corporate    Support    Keyword Search    Search ▶

ALIENWARE SYSTEMS PRICED BELOW OFFERINGS FROM DELL AND HP

**Alienware Delivers High-Performance Systems at Affordable Price Points for Consumers and Corporations Alike**

**MIAMI, FL – December 8, 2004** - Alienware ®, the leading manufacturer of high-performance desktop, notebook, media center, and professional workstations, offers high-performance systems at prices more affordable than comparable systems from Dell and HP. Due to Alienware's continuing growth, and the resulting economies of scale, the company is able to pass along significant savings to both consumers and corporate customers.

Alienware is currently offering exciting incentives on numerous Alienware systems, including its entire line of desktop computers. Similar savings are available on other innovative systems such as Sentia™ notebooks and DHS™ media center systems through rebates of up to $250 plus free shipping. Alienware has also introduced a number of powerful new systems at attractive price points, among them the Area-51m 7700 mobile desktop and the DVD player sized DHS 2 Series media center.

"Alienware has long been known for cutting-edge performance and highly dedicated customer support, and now we are able to deliver these premium products to customers at unbeatable values," said Robert Lusk , vice president of sales and marketing for Alienware. "With Alienware's new impressively low price points, any perceived advantage of buying from another system manufacturer has disappeared."

**About Alienware**

Alienware manufactures high-performance desktop, notebook, and media center systems and leading-edge professional workstations. Alienware offers unique and award-winning products that incorporate state-of-the-art components, innovative engineering and design, and unprecedented customer service. Alienware systems are available direct within the United States and Europe . For more information, please visit **www.alienware.com/prprice** or call 1-800-ALIENWARE (254-3692).

# # #

**Alienware Contact:**
Jaclyn Gonzalez
Public Relations Specialist
jaclyn_gonzalez@alienware.com
(305) 251-9797

**Return to Press Releases**

Subscribe to Alienware Insider for exclusive offers, product launches, and technology news.    Enter your email address    Sign Up ▶

Contact Us | Support | Sales Support Chat | FAQ | Privacy | Disclaimer | Terms & Conditions | Careers | Site Map | RSS    Copyright © 2007 Alienware.

# ALIENWARE AREA-51M 7700 MOBILE DESKTOP NOW FEATURES WINDOWS MEDIA CENTER EDITION 2005

**Area-51m 7700 Performs as Both an Entertainment Center and a Cutting-Edge Desktop in a Portable System**

**MIAMI, FL – July 7, 2005** - Alienware ®, the leading manufacturer of high-performance desktop, notebook, media center and professional computing systems, announced that the award-winning Alienware Area-51m 7700 mobile desktop is now available with the Microsoft Windows XP Media Center Edition 2005 operating system.  Powered by Windows XP technology, the Area-51m 7700 gives customers a mobile solution for all their entertainment and computing needs without sacrificing any of the power of today's most advanced desktops.

Area-51m 7700 mobile desktops featuring Windows XP Media Center Edition 2005 include dual-tuner support and deliver the options and features of a DVD player, DVR, FM tuner, CD jukebox, and more. Supplying the most storage of any media center in a portable system, the Area-51m 7700 provides travelers, gamers, college students, military personnel, and other mobile users the perfect way to enjoy all of their media wherever they need to go. The Area-51m 7700 also comes equipped with a Windows XP Media Center Edition remote control, IR receiver, and PCMCIA TV tuner to further enhance the mobile entertainment experience.

"Alienware introduced the Area-51m 7700 mobile desktop just a few months ago and it has already received an overwhelmingly positive response from customers and media members alike," said Patrick Cooper, director of product management for Alienware. "With the addition of Windows XP Media Center Edition 2005, the Area-51m 7700 now stands poised to garner further acclaim as the system of choice for anyone desiring easy mobile access to all their entertainment."

Having recently earned an Editors' Choice Award from *PC Gamer* magazine, the Area-51m 7700 packs desktop power into a portable platform with features like the Intel ® Pentium ® 4 desktop processor with 1MB of cache, next-generation PCI Express technology, and expansion for up to 4 GB of DDR2 memory. Area-51m 7700 users will also benefit from NVIDIA ® GeForce ™ Go 6800 graphics and a 17" widescreen SXGA + LCD display that serve as the ideal complements for Windows XP Media Center Edition 2005.

"Windows XP Media Center Edition 2005 provides our customers a wide range of complete, connected entertainment experiences, whether at home or on the go" said Bill Mannion, director of Windows Consumer Marketing at Microsoft Corp.  "With a Windows XP Media Center Edition 2005 powered Area-51m 7700 mobile desktop, our mutual customers can be assured of the seamless and innovative digital entertainment experiences regardless of their location."

**About Alienware**
Alienware manufactures high-performance desktop, notebook, and media center systems and leading-edge professional systems. Alienware offers unique and award-winning products that incorporate state-of-the-art components, innovative engineering and design, and unprecedented customer service. Alienware systems are available direct within the United States, Europe, Australia and New Zealand, and will soon be offered in other locations around the Pacific Rim.  For more information, please visit www.alienware.com/mce7700 or call 1-800-ALIENWARE (254-3692).

### #

**Alienware Contact:**

Jaclyn Gonzalez

Public Relations Specialist

jaclyn_gonzalez@alienware.com

(305) 251-9797

Return to Press Releases

Subscribe to Alienware Insider for exclusive offers, product launches, and technology news.   Enter your email address   Sign Up ▶

Contact Us | Support | Sales Support Chat | FAQ | Privacy | Disclaimer | Terms & Conditions | Careers | Site Map | RSS   Copyright © 2007 Alienware

# **EXHIBIT 10**

1470 Fulton Street, Apt. 8
San Francisco, CA   94117

October 4, 2006

CERTIFIED MAIL -
RETURN RECEIPT REQUESTED
**Alienware Corporate Headquarters**
14591 SW 120 ST
Miami, FL 33186-8638

Re:   NOTIFICATION PRIOR TO COMMENCEMENT OF ACTION PURSUANT
      TO THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT

Dear Alienware:

My name is Harry Oestreicher and I purchased a defective Area 51 notebook computer in
California on June 30, 2005.  I am sending this letter pursuant to California *Civil Code* § 1782.

Alienware advertises these notebook computers as being (*inter alia*) "of the absolute
highest quality" and claims "every detail of an Alienware product is carefully scrutinized and
perfected."

However, my Area 51 notebook computer and like models, including the 5550, 5700,
5750, 7500 and 7700 notebook computers are defectively designed and overheat during normal
usage.  Alienware's representations of quality violate California *Civil Code* § 1770, subds. (5),
(7) and (9) in the following respects:

Under subsection (5), Alienware has represented that the Area 51 notebook
computer has characteristics and benefits it does not have;

Under subsection (5), Alienware has represented that the Area 51 notebook
computer is of a particular standard when it is not; and

Under subsection (9), Alienware has advertised the Area 51 notebook computer
with an intent not to sell it as advertised.

Pursuant to California *Civil Code* § 1782, this letter serves as notification of Alienware's
alleged violations of section 1770 and my demand that Alienware correct, repair, replace, or
otherwise rectify the overheating problem in the aforementioned Area 51 notebook computers.
Specifically, I request that Alienware recall the aforementioned Area 51 notebook computers and

Alienware Corporate Headquarters
October 4, 2006
Page 2

refund all purchasers of the notebook computers the purchase prices, plus interest.  In the
alternative, at the election of the purchasers, I request that Alienware fix the overheating
problems at no cost to the purchasers and compensate those consumers for the loss of use of the
product.  In addition, I request that all purchasers of the Area 51 notebook computers be
reimbursed for any sums they paid for repair of those products.  Finally, I requests that
Alienware cease its misleading and false advertising practices in connection with these products
in whatever context it occurs.

If Alienware fails to respond to this demand within 30 days receipt of this letter, pursuant
to section 1782, I will instruct my legal counsel to institute an action in California requesting
actual damages, plus punitive damages, interest, attorneys' fees and costs for Alienware's
violations of California *Civil Code* § 1770.

In closing, I request that all correspondence to me regarding this matter be copied to my
attorneys at the following addresses:

David P. Meyer, Esq.                        Michael L. Kelly, Esq.
David P. Meyer & Associates., Co. LPA       Kirtland & Packard LLP
1320 Dublin Road, Suite 100                 2361 Rosecrans Avenue, 4th Floor
Columbus, Ohio 43215                        El Segundo, CA 90245

Sincerely,

Harry Oestreicher

CC:   David P. Meyer, Esq.
      Michael L. Kelly, Esq.

**EXHIBIT 11**

From: **James Espinosa** <james_espinosa@alienware.com>
Date: Oct 11, 2006 2:58 PM
Subject: HARRY OESTREICHER, JR. ; Account 322125
To: harryo1968@gmail.com

Greetings,


I am from Alienware's Critical Issues Team located in our Miami, FL headquarters. It has
been brought to my attention that you have been experiencing overheating issues with your
Alienware laptop. I would like to apologize for any inconvenience this may have caused.


We can gladly arrange a depot repair to have your computer diagnosed and repaired in our
Miami facilities. Of course, we would offer expedited service, as well as shipping to and from
our facilities. However, as you are currently out of warranty, any parts that are replaced will
need to be paid for at your expense. I can provide a 10% discount towards the purchase of
replaced parts, as well as waived shipping to and from our facilites.


Please, feel free to contact me at your earliest convenience and we can arrange this
together.


Thank you,


**James Espinoza**
Critical Issues Technical Agent

**Alienware Corporation**
Phone: 305.251.9797 x2783
Fax:    786.388.5719
**www.alienware.com**


DISCLAIMER:
The content of this email and any attachment may contain proprietary and confidential
information. It is intended to be conveyed only to the designated recipient(s). If you are not an
intended recipient of this message, please notify the sender by replying to this message and then
deleting it from your system. Use, dissemination, distribution or reproduction of this message by
unintended recipients is not authorized and may be unlawful.