UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY OESTREICHER, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br>  v.<br>ALIENWARE CORPORATION, and DOES 1–100, inclusive,<br><br>            Defendants.<br>_____/ | No. C 07-00512 MHP<br><br>**MEMORANDUM AND ORDER**<br>**Re: Plaintiff's Motion to Dismiss** |

On December 6, 2006 Plaintiff Harry Oestreicher ("Oestreicher") brought this action against defendant Alienware Corporation ("Alienware") in San Francisco County Superior Court. Oestreicher alleges that Alienware concealed material information regarding a design defect when selling certain computers that Alienware knew to be defective. On January 25, 2007 Alienware removed the action to this court. On January 7, 2008 Oestreicher filed his Second Amended Complaint ("SAC"), which Alienware now moves to dismiss. Having considered the parties' arguments and for the reasons stated below, the court rules as follows.

BACKGROUND[1]

Oestreicher purchased a notebook computer from Alienware, via Alienware's website, on or around June 30, 2005. SAC, ¶ 30. He chose the three-month warranty option and paid $4,149 for his purchase. Id., ¶¶ 30–31. Six months later, the notebook shut down and has not worked since. Id., ¶ 33.

Oestreicher claims his computer overheated. He asked Alienware to repair his computer and they offered to assist him over the phone for $39 per call. He declined. Id. In March 2006 he asked Alienware to repair his computer for free and they declined. Id., ¶ 34. Oestreicher then requested to purchase parts for his machine and was informed that Alienware did not allow outside parties to purchase parts for Alienware's computers. Id., ¶ 35.

Oestreicher alleges that Alienware concealed material information in its sale of certain computers which Alienware knew to be defective. Specifically, Oestreicher claims Alienware knew of two design defects—an inadequate heat management system, including the copper heat distribution rods, metal heat distribution fins and fans, and improper placement of the air intake vent—that caused its computers to overheat. Id., ¶ 6. Oestreicher claims the placement of the vent on the bottom of the computer caused it to be blocked when the machine rested on a surface and that the internal metal fins collect lint and debris over time, which block airflow and lead to inadequate heat dissipation. Id., ¶ 43.

Oestreicher claims Alienware knew, or was reckless in not knowing, about this alleged design defect. Id., ¶ 51. Furthermore, Oestreicher alleges that Alienware was made aware of the defects through consumer complaints and postings on the internet. Id., ¶¶ 52, 60. Nevertheless, Oestreicher claims, Alienware failed to inform potential consumers of the problem.

To this end, Oestreicher asserts five causes of action: (1) violation of the California Legal Remedies Act ("CLRA"), California Civil Code sections 1750 et seq.; (2) unfair, deceptive and unlawful business practices in violation of California's Unfair Competition Law ("UCL"), Business and Professions Code sections 17200 et seq.; (3) untrue and misleading advertising in violation of the False Advertising Law ("FAL"), California Business and Profession Code sections 17500 et seq.; (4) fraudulent concealment/non-disclosure; and (5) unjust enrichment. Oestreicher filed this action on behalf of himself and all other similarly situated residents of California who purchased Alienware notebook computers m5500, m5550, m5700, m7700, and/or all other comparably-designed Area-51 laptops. SAC, ¶ 2. Alienware now moves to dismiss the SAC for failure to state a claim and for lack of specificity.

2

LEGAL STANDARD

I.  Rule 12(b)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim—and not the claim's substantive merits—"a court may [typically] look only at the face of the complaint to decide a motion to dismiss." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754–55 (9th Cir. 1994).

II.  Fraud-based claims

A plaintiff alleging fraud must satisfy a heightened pleading standard that requires circumstances constituting fraud be pled with particularity. Fed. R. Civ. P. 9(b). Specifically, "[t]he pleadings must state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud. Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994),

3

cert. denied, 516 U.S. 810 (1995). In addition, plaintiffs seeking to satisfy Rule 9(b) must "set forth an explanation as to why the statement or omission complained of was false and misleading." In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc); see Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995), cert. denied, 517 U.S. 1136 (1996). The pleading must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation omitted).

It is well established that Rule 9(b)'s requirement that allegations of fraud be pled with particularity applies to state-law causes of action before a federal court: "'[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule.'" Vess, 317 F.3d at 1103 (quoting Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985)); see also Jenkins v. Commonwealth Land Title Ins. Co., 95 F.3d 791, 796 (9th Cir. 1996).

Finally, a plaintiff seeking to state a claim for fraud must also plead knowledge of falsity, or scienter. See GlenFed, 42 F.3d at 1546. The requirement for pleading scienter is less rigorous than that which applies to allegations regarding the "circumstances that constitute fraud" because Rule 9(b) states that "malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Nonetheless, nothing in the Federal Rules of Civil Procedure relieves a plaintiff of the obligation to "set forth facts from which an inference of scienter could be drawn." Cooper v. Pickett, 137 F.3d 616, 628 (9th Cir. 1997) (quoting GlenFed, 42 F.3d at 1546).

This heightened pleading standards applies to allegations of fraud and allegations that sound in fraud, including false misrepresentations. Vess, 317 F.3d at 1106–07; see also Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC, 404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005) ("It is well settled in the Ninth Circuit that misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s particularity requirement."); Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (same).

4

DISCUSSION

I.    CLRA

Oestreicher's claims concern the purported design defect in the heat management system and Alienware's failure to disclose the same. He alleges that Alienware violated three provisions of the CLRA by: 1) falsely representing that goods have uses or characteristics they do not actually have, Cal. Civ. Code § 1770(a)(5); 2) falsely representing that goods are of a particular standard or quality when they are of another, id., § 1770(a)(7); and 3) advertising goods with the intent not to sell them as advertised, id., § 1770(a)(9).

The pleading standard, under California law, for CLRA claims based upon non-disclosure is set forth in Daugherty v. Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824 (2006); see also Bardin v. Daimlerchrysler Corp., 136 Cal. App. 4th 1255 (2006). In Daugherty, plaintiffs alleged that Honda violated the CLRA because it was aware that as a result of a defect in the engine, an oil leak could develop that could eventually lead to total engine failure outside Honda's warranty.[2] Daugherty expressly rejected the notion that a manufacturer can be liable under the CLRA for failure to disclose a defect that manifests itself after expiration of the warranty period. 144 Cal. App. 4th at 835–36. The Daugherty court, however, created exceptions if: 1) the omission is "contrary to a representation actually made by the defendant"; or 2) the omission pertains to "a fact the defendant was obligated to disclose," e.g., facts relating to product safety. Id. at 835. There are no allegations of misrepresentations here and therefore the court's analysis focuses on whether the omission pertains to a fact the defendant was obligated to disclose.

Daugherty has been followed by other courts in this and adjoining districts. See Hoey v. Sony, 2007 WL 2972915, at *3–*4 (N.D. Cal. Oct. 10, 2007) (Whyte, J.); Long v. Hewlett-Packard Co., 2007 WL 2994812, at *8 (N.D. Cal. July 27, 2007) (Ware, J.); Brothers v. Hewlett-Packard Co., 2006 WL 3093685, (N.D. Cal. Oct. 31, 2006) (Whyte, J.); Anunziato, 402 F. Supp. 2d at 1135–36. The "obligated to disclose" exception has also been upheld in this district. See Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1094–96 (N.D. Cal. 2007) (Alsup, J.) (distinguishing Daugherty and Bardin because in those cases no safety concerns were alleged and therefore "the court's decision to

5

dismiss a claim for unlawful omission rested on the lack of a duty to disclose.").

In Hoey, plaintiffs sought to bring a class action against Sony alleging Sony violated the CLRA by failing to disclose soldering defects that manifested after the expiration of the plaintiffs' warranties in two series of notebook computers. Citing Daugherty, the court dismissed plaintiffs' claims, refusing to allow the plaintiffs "to bootstrap Sony's express warranty into a representation that the VAIO notebooks are defect-free, such that a failure to disclose the alleged soldering defect would constitute concealment." 2007 WL 2972915, at *4.[3] Similarly, in Long, plaintiffs sought to bring a CLRA claim against Hewlett-Packard on behalf of a putative class, alleging that Hewlett-Packard failed to disclose an allegedly defective inverter that caused the monitor in the Pavillion notebook computers to flicker and fail outside the warranty period, but within the computers' "useful life." 2007 WL 2994812, at *1. Relying on Daugherty, the court held that because Hewlett-Packard was not alleged to have made any representation as to the life of the inverter, or even the useful life of the Pavillions, Hewlett Packard's alleged failure to disclose the inverter defect was not actionable under the CLRA when the defect manifested itself after the warranty period. Id., at *8.

Here, since any defects in question manifested themselves after expiration of the warranty period, plaintiff's CLRA claim must be barred under Daugherty, Bardin, Hoey, and Long.[4] Plaintiff's attempts to distinguish these cases is unpersuasive.[5]

Plaintiff attempts to bootstrap his CLRA claim to a common law fraud claim. Since fraud claims impugn a defendant's conduct, he claims Daugherty is inapplicable. While it may be correct that the CLRA is not limited to providing redress for undisclosed safety defects, it does not codify all instances of common law fraud. Plaintiff relies upon Khan v. Shiley, Inc., 217 Cal. App. 3d 848, 857–58 (1990), which found that in "a tort action for deceit," "a manufacturer of a product may be liable for fraud when it conceals material product information from potential users. This is true whether the product is a mechanical heart valve of frozen yogurt."[6] Thus, plaintiff argues that California law has no requirement of a safety hazard before a duty to disclose material facts about a product arises. Though this is correct with respect to common law, it does not demonstrate why the

6

CLRA must be expanded from its present scope. Plaintiff argues that the CLRA with the safety limitation renders it wholly unnecessary because product defects that create safety hazards are already actionable under ordinary tort law. Plaintiff's proposed expansion, bootstrapping via common law fraud claims, however, is also wholly unnecessary because material product defects that are knowingly kept secret are also already actionable under common law fraud. The court finds unpersuasive plaintiff's rationale for making the CLRA co-extensive with common law fraud.

There are, however, other courts that have found a failure of any obligation to disclose—independent of safety considerations—to create a cause of action under the CLRA. Consequently, plaintiff urges the court to follow Falk, 496 F. Supp. 2d 1088. Falk's reasoning first considered when a failure to disclose could constitute actionable fraud under the CLRA and then analyzed if any of those circumstances were met. It found that under California law, a failure to disclose or concealment can constitute actionable fraud under the CLRA in four circumstances:

> (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact.

Id. at 1095 (quoting LiMandri v. Judkins, 52 Cal. App. 4th 326, 337 (1997)); see also Strickrath v. Globalstar, Inc., 2008 U.S. Dist. LEXIS 12190, at *2 (N.D. Cal. Feb. 6, 2008) (Henderson, J.). The first condition is not in issue here. All of the other situations require materiality. To this end, Falk held:

> In order for non-disclosed information to be material, a plaintiff must show that 'had the omitted information been disclosed, one would have been aware of it and behaved differently.' Mirkin v. Wasserman, 5 Cal.4th 1082, 1093, 23 Cal.Rptr.2d 101, 858 P.2d 568 (1993). Materiality, for CLRA claims, is judged by the effect on a 'reasonable consumer.' Consumer Advocates v. Echostar Satellite Corp., 113 Cal.App.4th 1351, 1360, 8 Cal.Rptr.3d 22 (2003).

496 F. Supp. 2d at 1095. This court agrees that materiality should be judged by Falk's standards, which uses the expectations of a reasonable consumer and his behavior.

Falk dealt with a defective speedometer. There "[p]laintiffs claim[ed] that, had they known of the alleged defect in certain GM speedometers, they would have considered not purchasing the trucks or demanding a lower price." Id. The same is the case here because Oestreicher claims that

had he known of the defect, he would not have purchased the computer or would have demanded a lower price. However, the Falk court stated:

> Common experience supports plaintiffs' claim that a potential car buyer would view as material a defective speedometer. That a speedometer is prone to fail and to read a different speed than the vehicle's actual speed, even a difference of ten miles per hour, would be material to the reasonable consumer, driver and passenger. Such a faulty speedometer easily would lead to traveling at unsafe speeds and moving-violation penalties.

Id. at 1096. Thus, the safety consideration was integral to the court's finding that the non-disclosed information was material. There is no such showing here.

The other cases plaintiff relies upon that find a broad duty to disclose are factually dissimilar. Lovejoy v. AT&T, 92 Cal. App. 4th 85, 97–98 (2001), and In re Medscan Research, Ltd., 940 F.2d 558 (9th Cir. 1991), are distinguishable since they did not deal with manufactured products. Strickrath, 2008 WL 12190, also dealt with a service and not a manufactured product. Moreover, it simply followed Falk without further discussion and is consequently unpersuasive. Similarly, both Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979 (2004), and Khan, 217 Cal. App. 3d 848, are inapplicable because they both dealt with the economic loss doctrine, not a manufacturer's duty to disclose defects that may manifest themselves after the warranty period. Moreover, both cases are factually dissimilar since they involved affirmative misrepresentations.

Rush, et al. v. Whirlpool Corp., 2008 U.S. Dist. Lexis 17120 (Feb. 22, 2008, W.D. Ark.), cited in a supplemental submission, is unpersuasive since that brief opinion by the Western District of Arkansas interpreting California law did not discuss the relevant case law. The cursory decision relied squarely upon Falk without distinguishing or even mentioning Daugherty. Similarly, in Smith v. Ford Motor Co., No. 06-00497 MMC (Mar. 14, 2008, N.D. Cal.) (Chesney, J.), the district court denied the motion for judgment on the pleadings without any discussion whatsoever. Contrary to plaintiff's assertion in this case, the plaintiffs in Smith argued that the ignition-lock defect in issue was safety related, making the case akin to Falk. See id., Docket No. 106.

Finally, in light of courts of appeal and federal decisions that are on point, this court does not place any weight upon Richina v. Maytag Corp., Case No. CV-025202 (San Joaquin County, June 15, 2007) (denial of summary adjudication) (safety related issue not necessary for CLRA liability).

8

Plaintiff claims that holding a higher standard for CLRA claims would violate the rule governing its construction, namely that the CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760. Though this may at first blush be appealing, there are strong policy reasons that militate against a broad duty to disclose in this particular situation.

A contrary holding would eliminate term limits on warranties, effectively making them perpetual or at least for the "useful life" of the product. See Falk, 496 F. Supp. 2d at 1096 ("Here, however, plaintiffs allege that they did, in fact, have expectations about the product in question. Plaintiffs plead that a reasonable consumer would expect a speedometer to last for the life of a vehicle."). The Second Circuit has succinctly stated the problem with such an approach:

> [V]irtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a 'latent defect' that existed at the time of sale or during the term of the warranty. All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to 'know' that many parts will fail after the warranty period has expired. A rule that would make failure of a part actionable based on such 'knowledge' would render meaningless time/mileage limitations in warranty coverage.

Abraham v. Volkswagen of America, Inc., 795 F.2d 238, 250 (2d Cir. 1986). This rationale applies with even greater force to the component parts of laptop computers where consumer expectations are even more subjective and likely unreliable, and where usage will greatly vary from consumer to consumer. Indeed, the purpose of a warranty is to contractually mark the point in time during the useful life of a product when the risk of paying for repairs shifts from the manufacturer to the consumer. This court agrees with the Daugherty court, which stated:

> Opening the door to plaintiffs' new theory of liability would change the landscape of warranty and product liability law in California. Failure of a product to last forever would become a 'defect,' a manufacturer would no longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself.

144 Cal. App. 4th at 829 (quoting trial court).

In sum, although there is a split among courts, the cases weigh heavily toward Daugherty and the circumstances of this case are factually closer to the Daugherty line of cases, than to Falk and other cases that find a broader duty to disclose. Furthermore, policy reasons militate against following Falk in this situation—where a duty to disclose is being imposed on a manufacturer for a latent non-safety related defect in its product. Defendant's motion to strike plaintiff's CLRA claim is therefore GRANTED with prejudice.

II.  Derivative UCL Claim

Defendant contends that under Daugherty, plaintiff's UCL and FAL claims are also barred. Specifically, the UCL claims are barred because the Daugherty court held:

> We cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is likely to deceive anyone within the meaning of the UCL. . . . [I]n order to be deceived, members of the public must have had an expectation or an assumption about the matter in question. . . . The only expectation buyers could have had about the [defective] engine was that it would function properly for the length of Honda's express warranty, and it did. Honda did nothing that was likely to deceive the general public by failing to disclose that [the] engine might, in the fullness of time, eventually dislodge the front balancer shaft oil seal and cause an oil leak.

144 Cal. App. 4th at 838 (internal citations and quotations omitted). Thus, "the failure to disclose a defect that might, or might not, shorten the effective life span of an automobile part that functions precisely as warranted throughout the term of its express warranty cannot be characterized as causing a substantial injury to consumers, and accordingly does not constitute an unfair practice under the UCL." Id. at 839; see Long, 2007 WL 2994812, at *8 (citing Daugherty and dismissing plaintiffs' UCL claim because "a consumer's only reasonable expectation was that the Pavillions would function properly for the duration of HP's limited one-year warranty"). This court agrees for the same reasons as those given above. Thus, defendant's motion to strike plaintiff's UCL claim based on the CLRA is GRANTED with prejudice.

III.  Standalone UCL/FAL Claim

Plaintiff claims to have pled partial representations likely to mislead the public. "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable

10

consumer could not rely, and hence are not actionable." Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) (quoting Glen Holly Entertainment, Inc. v. Tektronix Inc., 343 F.3d 1000, 1005 (9th Cir. 2003)). "While product superiority claims that are vague or highly subjective often amount to non[-]actionable puffery, . . . misdescriptions of specific or absolute characteristics of a product are actionable." Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1145 (9th Cir. 1997). Plaintiff has provided no specific statement or absolute characteristic regarding Alienware laptops. Thus, the generalized and vague statements of product superiority such as "superb, uncompromising quality" and "faster, more powerful, and more innovative than competing machines" are non-actionable puffery. See Brothers, 2006 WL 3093685, at *4–*5 (rejecting "high-performance" and "top of the line" as mere puffery); Long, 2007 WL 2994812, at *7 (Ware, J.) (rejecting "reliable mobile computing solution" and "do more on the move" as puffery). The court has not been able to glean any false statements of fact from plaintiff's complaint. See SAC, ¶ 64. Indeed, "higher performance," "longer battery life," "richer multimedia experience," "faster access to data" are all non-actionable puffery.[7] The same goes for the following statement:

> The Area-51m is a powerful machine which requires powerful cooling. All Area-51m systems come with a custom made heat sink specifically designed for high speed processors. Sticking with Alienware® tradition, each unit is packed full of fans and exhaust units to ensure optimum performance.

See id. Even if the foregoing statement was not puffery, there is no misstatement of fact. The court need not deal individually with each alleged misrepresentation made in the complaint since they are all non-actionable puffery. In sum, defendant's motion to dismiss this cause of action is GRANTED.

IV.   Fraudulent Concealment

Under California law:

> [T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained

11

damage.

Hahn v. Mirda, 147 Cal. App. 4th 740, 748 (2007) (internal quotation omitted).

Rule 9(b) applies to this claim of fraud. In the complaint at issue here, plaintiff alleges that Alienware concealed a material fact, namely, the design defect. Second, plaintiff contends Alienware had a duty to disclose information regarding this material issue because it had: 1) exclusive knowledge as the manufacturer; 2) actively concealed the defect by failing to disclose; and 3) made partial disclosures in the form of statements about the computers.[8] Third, plaintiff asserts that Alienware intended to defraud in order to increase its own profits. Fourth, plaintiff alleges reliance by stating that he would not have bought the computer or would have demanded a lower price had he known of the alleged latent defect. Finally, plaintiff alleges he has suffered harm, namely, a non-operable computer, as a result of the misconduct. SAC, ¶¶ 62–63.

The above allegations do not specify any factual basis for them.[9] Indeed, allegations of this nature with respect to all prongs above could be made about any alleged design defect in any manufactured product. The heightened pleading requirements of Rule 9(b) were designed to avoid exactly this situation. Due to a lack of facts substantiating the fraud, plaintiff's fraudulent concealment claim is DISMISSED with prejudice. Consequently, plaintiff's UCL claim based on the fraudulent concealment is also DISMISSED with prejudice.

V.   Unjust Enrichment

Defendant claims that because a cause of action for unjust enrichment is, by definition, a quasi-contractual remedy, the presence of a contract between the parties necessarily precludes this cause of action. See Paracor Fin., Inc. v. Gen. Elec. Cap. Corp., 96 F.3d 1151, 1167 (9th Cir. 1996). Plaintiff, however, is not claiming relief under theories of contract. Thus, Paracor does not preclude plaintiff from making a claim for common law unjust enrichment. However, since plaintiff's fraud-based claims have been dismissed, plaintiff has no basis for its unjust enrichment claim. Consequently, defendant's motion to dismiss this cause of action is GRANTED.[10]

///

12

///

CONCLUSION

    For the foregoing reasons, Alienware's motion to dismiss is GRANTED.

IT IS SO ORDERED.

Dated: March 31, 2008

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

13

**ENDNOTES**

1.    Unless otherwise indicated, all facts are taken from the SAC.  See Docket No. 114. Additional background facts are available in the court's August 10, 2007 order denying defendant's motion to stay the proceedings and compel arbitration.  See Docket No. 60.

2.    The fact that some of the cars in Daugherty failed after 57,000 miles when a 36,000 mile warranty was in place is indistinguishable from the case at bar, where a computer failed after six months when a three-month warranty was in place.

3.    The court is aware that a motion for reconsideration has been made and briefed in Hoey, but that court has not yet ruled.

4.    This line of cases was also followed in the recently decided Buller v. Sutter Health, 160 Cal. App. 4th 981 (2008).

5.    Plaintiff claims that the Daugherty and Bardin plaintiffs failed to plead an expected useful life other than the warranty period, leaving the courts there little choice but to limit the expected useful life to the warranty term.  However, plaintiff could not possibly be arguing that the useful life of a car is 36,000 miles or three years, whichever comes first.  See Daugherty, 144 Cal. App. 4th at 830.  This court holds that since it is common knowledge that the useful life of a car made by Honda or Diamler-Chrysler is more than 36,000 miles or three years, the same could not have been the court's limiting factor in either Bardin or Daugherty.  Thus, plaintiff's attempt to distinguish on this basis fails.

6.    It is worth noting that the products in question in Khan, mechanical heart valves, fall squarely within the after-decided Daugherty safety exception.

7.    Statements not relating to the machine bought by plaintiff could not possibly have caused him to rely on its contents.  Thus, the following statement is not actionable:
> Considering the amount of performance the Area-51 m9750 pumps out, a light chassis that can manage thermals efficiently and has plenty of strength to protect everything inside is essential. Steel or plastic simply won't cut it. That's why the Area-51 m9750 features magnesium alloy, which is 75% lighter than steel and provides better rigidity than plastic to deliver the optimum solution.

8.    For the purpose of this analysis, the court assumes that the materiality prong is met and an action for fraudulent concealment may lie in the absence of a safety issue.

9.    Random anecdotal examples of disgruntled customers posting their views on websites at an unknown time is not enough to impute knowledge upon defendants. There are no allegations that Alienware knew of the customer complaints at the time plaintiff bought his computer.

10.     In light of the court's holding, it does not reach whether plaintiff has standing to bring claims on behalf of consumers would bought Alienware laptops with a different model number than the one plaintiff bought.